PATRICIA KEKELIS v. WHITIN MACHINE WORKS.

(Filed 10 April 1968.)

**1. Negligence § 21—**

Negligence may not be inferred from the mere fact of an occurrence which injures a plaintiff.

**2. Negligence § 5—**

The doctrine of *res ipsa loquitur* applies to make an occurrence itself some evidence that it arose from want of care when an instrumentality causing an injury to the plaintiff is shown to be under the control and operation of the defendant, and the accident is one which, in the ordinary course of events, does not happen if those who have the management of it use the proper care.

**3. Same—**

*Res ipsa loquitur* does not apply when more than one inference can be drawn from the evidence as to whose negligence caused the injury or when the instrument causing the injury is not under the exclusive control and management of the defendant.

**4. Negligence § 24c—**

Negligence and causation may be proved by circumstantial evidence.

**5. Negligence §§ 1, 5—**

Ordinarily, a plaintiff must prove circumstances tending to show some fault of omission or commission on the part of defendant in addition to those which indicate the physical cause of an accident, but where the doctrine of *res ipsa loquitur* applies, it is distinctive in permitting negligence to be inferred by the jury from the physical cause of an accident, without the aid of circumstances as to the responsible human cause.

**6. Negligence §§ 24b, 24c—**

The rule of *res ipsa loquitur* does not apply when the facts of the occurrence merely indicate negligence by some person and do not point to defendant as the only probable tortfeasor, and in such case the action must be nonsuited unless additional evidence is introduced which eliminates negligence on the part of all others who had control of the instrument causing plaintiff's injury.

**7. Same—**

Evidence of plaintiff that defendant installed a textile machine for plaintiff's employer, that other employees checked the machine and prepared it for operation, that the machine was not working properly when plaintiff began operating it, and that plaintiff received an electric shock from the machine, *is held* insufficient to go to the jury on the issue of defendant's negligence in installing the machine, the doctrine of *res ipsa loquitur* being inapplicable because the machine was not under defendant's control when plaintiff was injured, and plaintiff having failed to produce evidence that the other employees who worked with the machine were free from fault.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Crissman, J.,* 17 April 1967 Civil Session of GUILFORD, docketed and argued at the Fall Term as Case No. 684.

Action for personal injuries.

The material allegations of the complaint, except when quoted, are summarized as follows: In September 1964, defendant company was in the process of installing and wiring new machinery at the Burlington Throwing Company in High Point (Burlington), where plaintiff was employed. On 22 September 1964, plaintiff's supervisor assigned her to work on one of the new machines (ARCT FT-3, Model #788), which had been "approved by defendant's agent as ready for operation." This machine had not been operated before. While instructing another employee in the operation of the machine, plaintiff activated one of the spindles by pushing it with her right hand. In doing so, "she received into her body a powerful current of electricity." In consequence, her arm turned black and blue, and she was hospitalized for approximately two weeks. The arm has continued to incapacitate and pain her. Plaintiff's injuries were proxi-

mately caused by the negligence of defendant's agents in that they (1) wired the machine improperly and carelessly; (2) pronounced the machine ready for service when it was so defective that voltage became exposed at several points where operators were likely to receive electric shock; (3) placed the machine in service without having adequately tested and inspected it to ascertain if it could be safely operated; and (4) failed to warn plaintiff of the dangerous condition of the machine about which it knew or should have known.

Answering, defendant admitted that it had installed the machine upon which plaintiff was working. It denied all other material allegations in the complaint and pleaded contributory negligence on the part of both plaintiff and her employer.

At the trial, defendant offered no evidence. Plaintiff's evidence tended to show the following facts: For two or three months prior to 22 September 1964, the date of the occurrence in question, defendant had been in the process of installing and wiring new machinery for Burlington. Seven of the new machines, which are of French manufacture, were in operation on that date. The machines are long and six feet high. An aisle, one and a half feet wide, runs through the center of the machine and allows the operator to get to its inner portions. At the back of the aisle is a metal ramp which enables the operators to reach the higher parts of the machine. In operating the machine, fibres must be tied together at different points around the machine. These fibres, or yarn, pass through two heater blocks, which — when properly heated — "fluff" the yarn and give it a certain "spring." The yarn is drawn through the heater blocks by a fine wire which is then attached to a rotor. Thereafter, each rotor is placed in a spindle; the operator pushes in the spindle and thus starts the yarn running. The machine carries a large number of spindles in a row together. The evidence contains no picture or other information about the machine which would enable us to describe it more definitely.

On 21 September 1964, plaintiff reported to work on the "third shift" at 11:00 p.m. Her job was to instruct new girls how to operate the new machines, and the shift supervisor assigned her and Linda Lunsford to one of the machines. This machine never had been operated before; defendant had completed its installation during the "first shift." Employees on "the second shift had got the heat leveled and creeled the yarn in." On the third shift, a "fixer," who worked for Burlington, "had checked the machine out." When it was "started up," plaintiff and Mrs. Lunsford began tying "certain ends that the operators have to tie up at different points around the machine." They had trouble getting the "pilot tubes" going, and the yarn kept

breaking. Such breaking is generally caused by too much heat. Because of the continuous breaking, they had tied very few ends. Shortly after 12:00, plaintiff was standing on the ramp with her right hand on one of the spindles; no other part of her body was in contact with the machine. She pushed in the spindle and, at that moment, she received a large electric shock. For a few minutes, plaintiff was unable to move; she "just hung there" in a daze. When the yarn had burned out through the heater block, she jumped back and walked out of the machine. Her arm was white and cold! her fist balled up, and little streaks appeared in her arm. Plaintiff's supervisor took her to the hospital, where she remained until 6 October 1964. Since her discharge, the arm has continued to get "cold," and the muscles have, on occasion, "knotted up."

At the close of plaintiff's evidence, the court allowed defendant's motion for nonsuit. From the judgment dismissing the action, plaintiff appeals.

*Harold I. Spainhour for plaintiff appellant.*
*Smith, Moore, Smith, Schell & Hunter for defendant appellee.*

SHARP, J. Taken in the light most favorable to plaintiff, the evidence tends to show: On 21 September 1964, during "the first shift," defendant completed the installation of a yarn-processing machine for plaintiff's employer, Burlington. Second-shift employees got "the heat leveled and creeled the yarn in." On the third shift, which began at 11:00 p.m., Burlington's fixer "checked out" the machine, and it was started. The machine did not work properly; the yarn broke continuously, a condition ordinarily caused by excessive heat. About an hour later, as plaintiff went about teaching another employee to operate the machine, she received an electric shock, which injured her arm.

Ordinarily, a defendant's negligence may not be inferred from the mere fact of an occurrence which injures a plaintiff. On the contrary, in the absence of evidence on the subject, freedom from negligence will be presumed. *Etheridge v. Etheridge,* 222 N.C. 616, 24 S.E. 2d 477. In this case, plaintiff's evidence is sufficient to allow the jury to find that she received an electric shock from a machine which defendant had installed between 9 and 18 hours earlier, and that the shock injured her. She has, however, offered no evidence tending to show any fault on the part of defendant. Therefore, unless — as plaintiff contends — the mere fact of injury, under the circumstances here disclosed, is evidence from which the jury may infer

defendant's lack of due care, the judgment of nonsuit must be sustained. 3 Strong, N. C. Index, Negligence § 24b and c (1960).

The principle of *res ipsa loquitur*, as generally stated in our decisions, is this: When an instrumentality which caused an injury to plaintiff is shown to be under the control and operation of the defendant, and the accident is one which, in the ordinary course of events, does not happen if those who have the management of it use the proper care, the occurrence itself is some evidence that it arose from want of care. *Young v. Anchor Co.*, 239 N.C. 288, 79 S.E. 2d 785; *Etheridge v. Etheridge, supra; Springs v. Doll*, 197 N.C. 240, 148 S.E. 251; *Ridge v. R. R.*, 167 N.C. 510, 83 S.E. 762; 3 Strong, N. C. Index, Negligence § 5 (1960); Stansbury, N. C. Evidence § 227 (2d ed. 1963) and cases cited therein. The principle does not apply, *inter alia*, when more than one inference can be drawn from the evidence as to whose negligence caused the injury, *Springs v. Doll, supra,* or when the instrumentality causing the injury is not under the exclusive control or management of the defendant, *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21.

Negligence and causation, like other facts, may, of course, be proved by circumstantial evidence. *Drum v. Bisaner*, 252 N.C. 305, 113 S.E. 2d 560; 3 Strong, N. C. Index, Negligence § 24c (1960). As pointed out in Restatement (Second) of Torts § 328 D (1965), "Without resort to Latin the jury may be permitted to infer, when a runaway horse is found in the street, that its owner has been negligent in looking after it; or when a driver runs down a visible pedestrian, that he has failed to keep a proper lookout. When the Latin phrase is used in such cases, nothing is added. A *res ipsa loquitur* case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." *Id.* at p. 157.

*Res ipsa loquitur* (the thing speaks for itself) simply means that the facts of the occurrence itself *warrant an inference of defendant's negligence, i.e.,* that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking. *Ridge v. R. R.,* 167 N.C. 510, 83 S.E. 762; *Sweeney v. Erving*, 228 U.S. 233, 57 L. ed. 815, 33 S. Ct. 416.

In *Harris v. Mangum*, 183 N.C. 235, 237, 111 S.E. 177, 178, Adams, J., drew the following distinction "between circumstantial evidence and the technical definition of *res ipsa loquitur*":

"*Res ipsa loquitur*, in its distinctive sense, permits negligence to be inferred from the physical cause of an accident, without the aid of circumstances pointing to the responsible human cause. Where

this rule applies, evidence of the physical cause or causes of the accident is sufficient to carry the case to the jury on the bare question of negligence. But where the rule does not apply, the plaintiff must prove circumstances tending to show some fault of omission or commission on the part of the defendant *in addition to* those which indicate the physical cause of the accident." (Emphasis added.)

The rule of *res ipsa loquitur* never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the *only* probable tortfeasor. In such a case, unless *additional evidence,* which eliminates negligence. on the part of all others who have had control of the instrument causing the plaintiff's injury, is introduced, the court must nonsuit the case. When such evidence is introduced and the only inference remaining is that the fault was the defendant's, the plaintiff has produced sufficient circumstantial evidence to take his case to the jury.

The foregoing rule was applied in *Plunkett v. United Electric Service,* 214 La. 145, 36 So. 2d 704, 3 A.L.R. 2d 1437. There the defendant installed a gas heater in the attic of the plaintiff's home on December 22nd. About 10:00 p.m. on December 24th, electricity was cut off when an ice storm caused wires to break. About 6:00 a.m. on December 25th, a fire started from the heating unit and caused extensive damage to the house. The plaintiff sued for damages and relied upon the doctrine of *res ipsa loquitur* even though, "at the time of the fire, the heating unit was in plaintiff's home and under their control and management." The trial court found that the plaintiff had not tampered with the furnace since the defendant left the premises 39 hours earlier. In awarding damages, the court said that the only logical inference was that some fault on the defendant's part had caused the fire. After the plaintiff had shown freedom of fault on the part of all through whose hands the instrumentality had passed after it left the defendant, the doctrine of *res ipsa loquitur* then became applicable because — the court said — it was "reasonably evident that the damage would not have been caused if the device had been free from defect and had been properly installed." *Id.* at 167, 36 So. 2d at 711, 3 A.L.R. 2d at 1446.

Although in *Plunkett v. United Electric Service, supra,* the Louisiana court did not *ipsissimis verbis* make the distinction between circumstantial evidence in general and the technical rule of *res ipsa loquitur,* it did so in effect. The decision was that the plaintiff, by negating the responsibility of all others, had established by circumstantial evidence, in addition to the physical cause of the fire, that

the negligence of the defendant alone was responsible for it. The court said:

"It must be remembered that, in cases like this, (unlike most instances where *res ipsa loquitur* is invoked) the plaintiff does not obtain the benefit of the doctrine by merely showing the unusual accident and the resulting injury. On the contrary, plaintiff is required to establish with certainty that the instrumentality installed by defendant is the source of the damage; that he was without fault and that the time elapsing between the installation and the damage was such as to make it reasonably evident that the damage would not have been caused if the device had been free from defect and had been properly installed." *Id.* at 167, 36 So. 2d at 711, 3 A.L.R. 2d at 1446.

In *Peterson v. Power Co.*, 183 N.C. 243, 111 S.E. 8, plaintiff's cottage was destroyed by fire "an hour or two" after defendant's employees had connected gas fixtures inside with the main outside. In sustaining a verdict for the plaintiff, this Court said: "There is evidence from which the jury could reasonably infer that all other causes for the fire had been eliminated, leaving none but those attributable to defendant's want of care, or that of its employees, which is the same thing." *Id.* at 246-47, 111 S.E. at 11.

In automobile accident cases, we hold that "[t]he mere fact that an automobile veers off the highway is not enough to give rise to an inference of negligence." *Yates v. Chappell*, 263 N.C. 461, 465, 139 S.E. 2d 728, 731. When, however, a plaintiff's evidence "tends to remove everything that might have influenced the movement of the car, causing it to leave the road, save and except the hands of the man at the wheel," the plaintiff has offered circumstantial evidence sufficient to take his case to the jury on the question of the driver's actionable negligence. *Lane v. Dorney*, 252 N.C. 90, 94, 113 S.E. 2d 33, 36; *accord, Trust Co. v. Snowden*, 267 N.C. 749, 148 S.E. 2d 833; *Yates v. Chappell, supra.*

In the instant case, the machine from which plaintiff received an electric shock was not under the control of defendant at the time plaintiff was injured. Sometime during the first shift, defendant had turned it over to Burlington, which had had its fixer to "check out" the machine, and its second-shift employees to get the "heat leveled" and the yarn "creeled in." The fact that plaintiff received a shock from the machine undoubtedly allows an inference of negligence on the part of some person, but her evidence leaves unanswered the question, whose was the fault. It is a fair inference from plaintiff's testimony that she, an instructor in the use of the machine, was operating it in a proper and customary manner. She did not, however,

offer any evidence tending to negate negligence on the part of those who manipulated or worked with the machine during the few hours which elapsed between the time defendant turned the machine over to Burlington and the time plaintiff was injured. Neither the "fixer" who checked out the machine and started it nor the employees who "got the heat leveled and creeled the yarn in" testified. Plaintiff's evidence does not disclose what these operations entailed or how they were performed.

Since defendant had delivered the machine which caused plaintiff's injury into the hands of Burlington's employees who had thereafter exercised control over it — even though for a relatively short period —, plaintiff could not rely upon *res ipsa loquitur*. Having failed to produce evidence that those employees were free from fault, she was not entitled to go to the jury.

The judgment of nonsuit is
Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.