SHIELDS, EXRX., APPELLANT, *v.* KING ET AL., APPELLEES.■.

[Cite as Shields v. King (1973), 40 Ohio App. 2d 77.]

(No. C-72439—Decided November 26, 1973.)

*Messrs. Beirne & Wirthlin, Mr. John S. Wirthlin* and *Mr. Gates T. Richards* and *Mr. Maury M. Tepper,* for appellant.

*Messrs. Rendigs, Fry, Kiely & Dennis, Mr. D. Marc Routt,* for appellee Lionel R. King, M. D.

*Bloom & Greene Co., L. P. A.,* for appellee Good Samaritan Hospital of Cincinnati.

*Per Curiam.* This cause came on to be heard on an appeal on questions of law; transcript of the docket and

journal entries and original papers from the Court of Common Pleas of Hamilton County; a partial transcript of the proceedings; the assignments of error; the briefs; and the arguments of counsel.

The decedent, Frank Shields, was suffering from chronic glomerulonephitis, a kidney disease. While decedent was awaiting a kidney transplant, he underwent, on several occasions, a procedure known as hemodialysis, whereby waste products were removed from his blood by filtering it through a hemodialysis machine. The procedure was conducted at the hemodialysis unit of defendant, Good Samaritan Hospital, one appellee herein, with machinery owned and maintained by the hospital and under the supervision of defendant Dr. King, the other appellee, who was not an employee of the hospital, but was dependent upon a grant administered by the hospital and possessed a temporary privilege to practice medicine at such hospital. Dr. King's duties were to provide professional expertise needed in the establishment and operation of the hemodialysis unit.

In the initial stages of the hemodialysis procedure, it was necessary to prime the pumps of the dialysis machine with a pint of the patient's own blood or blood of compatible type. When he was being dialysized once a week, decedent procured a pint of compatible blood, which had been checked and cross-matched, from the Brown County Hospital and brought it to the defendant hospital to prime the machine. Dr. King determined that the decedent's condition would not improve unless he was dialysized twice weekly, on Tuesdays and Thursdays. Thereafter, decedent's own blood was saved from the Tuesday dialysis to prime the machine for the Thursday dialysis. Decedent continued to bring blood from Brown County Hospital to prime the machine for the Tuesday dialysis, because Dr. King felt that it would not be safe to save blood from Thursday until the following Tuesday. Subsequently, Dr. King determined that it was important to begin reusing decedent's blood exclusively, because use of decedent's own blood was much safer than using donor blood. Decedent's dialysis schedule was then set for Tuesday and Friday, and there-

after the decedent's blood saved from the previous treatment was used for priming the pump of the dialysis machine. By arrangement between the defendants, the blood was stored in a specially marked bottle in the hospital blood bank and was to be given only to a messenger or personnel of the hemodialysis unit. The hospital records fail to demonstrate the receipt of said blood, since the records were set up for donor blood.

On July 1, 1966, the decedent was examined by Dr. King and successfully underwent the hemodialysis treatment Dr. King saved a pint of decedent's own blood for use in priming the pump at decedent's next scheduled dialysis treatment, Tuesday, July 5, 1966. On July 5, 1966, decedent was examined by Dr. King and showed no signs of any infection. Dr. King examined the shunt, an apparatus surgically imbedded in decedent's arm which was used to facilitate the withdrawal of decedent's contaminated blood and the return to his body of his cleansed blood, and found no evidence of infection upon external examination. Thereupon, the procedure was successfully commenced, but within 30 minutes after decedent's own blood was readministered he went into severe shock. Decedent subsequently died on July 8, 1966, the cause of death being listed septicemia due to "E-Coli" (bacteria).

On July 3, 1968, plaintiff, the executrix of decedent's estate and the appellant herein, filed suit against Dr. King and Good Samaritan Hospital, alleging that "blood was administered to the decedent which was contaminated and directly caused his death"; that at all times the apparatus, equipment and facilities, including the blood which was administered to decedent, were in the exclusive control of Dr. King and Good Samaritan Hospital and their agents and employees who were acting within the scope of their employment; and that the decedent's death occurred under circumstances that in the ordinary course of events would not have occurred if ordinary care had been observed. Plaintiff further alleged that the decedent's death directly resulted from the following: "(1) administration of blood to decedent which was contaminated; (2) failure to

test the blood that was administered to decedent on July 5, 1966; (3) failure to properly inspect the equipment and facilities used to store blood for administration to patients.''

The cause was tried to a jury beginning October 24, 1972. At the conclusion of plaintiff's case, both defendants moved the court to arrest the case from the jury and enter a final judgment in their favor. It is from the granting of defendants' motions that plaintiff instituted this appeal. He presents the following five assignments of error:

''(1) The trial court erred in granting the motion for directed verdict on behalf of the defendants when the trial court found the doctrine of *res ipsa loquitur* was properly in the case.

''(2) The trial court erred in confusing the requirements of proof in holding that even though *res ipsa loquitur* applied, testimony of alternate causation was fatal to plaintiff's case.

''(3) The trial court erred in ruling that the expert's opinion created speculation or that an expert's opinion was necessary under laws in this case.

''(4) The trial court erred in directing a verdict when there were sufficient inferences to permit this case to be tried to a jury.

''(5) The trial court failed to construe the evidence most favorably toward plaintiff and they [sic] erroneously granted the defendant's motion for directed verdict.''

Plaintiff's first, second, fourth, and fifth assignments of error raise the same legal question of whether the trial court erred by taking the case from the jury at the conclusion of the plaintiff's evidence, upon the basis that the doctrine of *res ipsa loquitur* was not applicable under the facts in the instant case and that the presentation of evidence of alternative causation would result in a decision by the jury that would be purely speculative.

The rule of *res ipsa loquitur* is not a substantive rule of law but, rather, a rule of evidence which permits the jury to draw an inference of negligence where the instrumentality causing the injury was under the exclusive man-

agement and control of one of the defendants and the injury occurred under circumstances where in the ordinary course of events it would not have occurred if ordinary care had been observed. It is an evidential inference, not controlling upon the jury, but to be considered by the jury upon a proper instruction. The weight of the inference as well as the weight of the explanation is for the determination of the jury. *Glowacki* v. *North Western Ohio Ry. & Power Co.*, 116 Ohio St. 451; *Hurt* v. *Charles J. Rogers Transportation Co.*, 164 Ohio St. 329; *Fink* v. *New York Central Rd. Co.*, 144 Ohio St. 1; *Oberlin* v. *Friedman*, 5 Ohio St. 2d 1.

In *Shannon* v. *Jaller*, 6 Ohio App. 2d 206, the plaintiff was operated upon by the defendant doctor for the removal of a calcified deposit in his right shoulder joint. Prior to surgery, the plaintiff had no impairment of the radial or ulnar nerves in his right forearm, but following surgery he was unable to extend certain fingers of his right hand and sustained other injuries to his right hand which he alleged would not arise in the course of such surgery, in the exercise of ordinary care, skill, and diligence. Plaintiff further stated in his complaint that what happened during surgery is unknown to him due to his anesthetized condition but "is within the exclusive knowledge of the defendants present in surgery during plaintiff's unconsciousness, as to what happened to cause his injury while under their care and control." The court endorsed the application of the rule of *res ipsa loquitur* to cases of that type and held that the term instrumentality, as used in conjunction with *res ipsa loquitur*, must be accepted in a much broader sense than as a perceptible object. The court reasoned that where a defendant is in complete control of a procedure which results in injury and he alone has the means of knowing what occurred, it would do violence to the principle behind the rule of *res ipsa loquitur* to require the plaintiff to allege how and by what physical means his injury occurred.

The court in *Shannon* v. *Jaller, supra,* interpreted the third paragraph of the syllabus of *Oberlin* v. *Friedman, supra,* which has been used as the basis for the argument

that *res ipsa loquitur* is not applicable to cases involving medical malpractice. That paragraph reads as follows:

"Generally, the doctrine of *res ipsa loquitur* is not applicable in malpractice actions in which it is claimed applicability is based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results."

The court stated, in its interpretation of this syllabus, that it did not understand this language to mean that in all circumstances a particular profession enjoys immunity from the application of *res ipsa loquitur*.

We are in agreement with this interpretation and believe that the doctrine of *res ipsa loquitur* is clearly applicable to the medical profession where the conditions necessary to its application are present.

This Court is further of the opinion that the doctrine of *res ipsa loquitur* should not be restricted solely to factual situations involving a single defendant, but may be applied to factual situations involving two or more defendants who, as a result of concerted actions, were in collective and concurrent control of the only instrumentalities which, the evidence establishes, caused the injury. See *Bauer* v. *Pullman Co.*, 8 Ohio App. 2d 1; *Dearth* v. *Self*, 8 Ohio App. 2d 33.

In the instant case, the decedent was successfully dialysized under the same procedures and with the same equipment on several occasions prior the incident of July 5, 1966. The evidence presented, construing it most strongly in favor of the plaintiff, is that the source of the "E-Coli" bacteria which resulted in senticemia was contamination of either the blood used to prime the machine or of the dialysis machine. The evidence tends to establish that decedent's injury occurred under circumstances which in the ordinary course of events would not have occurred had ordinary care been observed.

It is apparent that both defendants were in concurrent or collective control of both the blood and the machine and were acting in concert. The machine was owned and maintained by the hospital. Dr. King agreed to provide the

professional expertise necessary for the hospital to provide the advertised services of its hemodialysis unit to the public. An employee of the hospital and Dr. King jointly prepared the machine for use. The blood used to prime the machine was removed by Dr. King, put into a special bottle, and stored by prior arrangement in the hospital blood bank. Prior to dialysis, the blood was transported to the hemodialysis unit from the blood bank by an employee of the hospital and was used by Dr. King to prime the pump of the dialysis machine.

Defendants argue that to allow the doctrine to apply under the facts in the instant case would result in speculation by the jury. However, we believe that it is just this type of factual situation which demonstrates the need for the doctrine.

The doctrine of *res ipsa loquitur* is founded on an absence of specific proof of acts or omissions constituting negligence, and the particular justice of the doctrine rests upon the foundation that the true cause of the occurrence, whether innocent or culpable, is within the knowledge or access of the defendant and not within the plaintiff's knowledge or accessible to him.

Under the doctrine, an inference of negligence is permitted from the mere happening of an accident where the defendant owes the duty and possesses the sole power of preventing the occurrence by the exercise of reasonable care and the means of explaining the cause are available to the defendant but inaccessible to the plaintiff. The doctrine arises from the inherent nature and character of the act causing the injury, and from the probabilities reasonably to be inferred from the character of the accident itself. 39 Ohio Jurisprudence 2d 739, Negligence, Section 151.

The rule of *res ipsa loquitur* requires an explanation from the defendants in the case at bar. It is their responsibility to present evidence to explain what occurred. In the instant case, the trial court erred in directing a verdict since the doctrine of *res ipsa loquitur* is applicable. Plaintiff's first, second, fourth and fifth assignments of error are well taken.

In his third assignment of error, plaintiff contends that "the trial court erred in ruling that the expert's opinion created speculation or that an expert's opinion was necessary under laws in this case." The record contains the uncontradicted testimony of decedent's family doctor which tends to establish the source of the contamination as being contaminated blood used for priming the dialysis machine or contamination of the machine itself. For the reasons set forth in sustaining plaintiff's first, second, fourth, and fifth assignments of error and in holding the doctrine of *res ipsa loquitur* applicable under the facts in the case at bar, plaintiff's third assignment of error is well taken.

It is, therefore. the order of this court that the judgment of the Court of Common Pleas of Hamilton County be and the same hereby is reversed and remanded for proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

HESS, P. J., SHANNON and PALMER, JJ., concur.