BRUCE SCHAFFNER, GUARDIAN AD LITEM FOR EUGENIA L. SCHAFFNER, MINOR v. CUMBERLAND COUNTY HOSPITAL SYSTEM, INC. AND DR. C. G. PANTELAKOS

No. 8512SC76

(Filed 19 November 1985)

1. Negligence § 6— applicability of res ipsa loquitur

The doctrine of *res ipsa loquitur* applies and allows the finder of fact to draw an inference of negligence from the circumstances surrounding an injury when (1) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission, (2) direct proof of the cause of the injury is not available, and (3) the instrumentality involved in the accident is under the defendant's control.

2. Negligence § 31— effect of inference created by res ipsa loquitur

The inference created by *res ipsa loquitur* will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence. The burden of proving negligence, however, remains with the plaintiff, and the finder of fact may reject the permissible inference of negligence even though the defendant presents no evidence.

3. Physicians, Surgeons and Allied Professions § 16— burn on hand during surgery—applicability of res ipsa loquitur

In a medical malpractice action against a hospital system and a surgeon to recover for a burn suffered by the minor plaintiff on her hand during surgery to have her adenoids removed and drainage tubes placed in her ears, plaintiff's forecast of evidence was sufficient to invoke the doctrine of *res ipsa loquitur* and thus to survive defendants' motion for summary judgment where a jury, based on common knowledge and experience, could reasonably conclude that the injury sustained was not an inherent risk of the operation and would not ordinarily occur absent negligence; a deposition of defendant surgeon identified the probable source of plaintiff's injury as a hyfrecator that malfunctioned and was replaced during surgery; plaintiff presented evidence that she was anesthetized during surgery and can offer no account of her injury; and plaintiff's evidence tended to show that defendants are in a position of superior knowledge regarding what transpired and, acting in concert, were in control of the only instrumentalities which could have caused plaintiff's injury.

4. **Physicians, Surgeons and Allied Professions § 16— injury to anesthetized plaintiff—inability to identify instrumentality and person in control—applicability of res ipsa loquitur**

> The inability of a plaintiff who was anesthetized during surgery to identify the instrumentality with which her injury was inflicted and a single defendant in exclusive control thereof did not preclude application of *res ipsa loquitur* in her medical malpractice action where defendants were in charge of plaintiff's person and of all instruments in the operating room which could have caused her injury.

5. **Physicians, Surgeons and Allied Professions § 16— medical malpractice—application of res ipsa loquitur to multiple defendants**

> The possibility that the negligence of one defendant was the sole cause of plaintiff's injury did not prohibit application of *res ipsa loquitur* to multiple defendants in a medical malpractice action.

6. **Physicians, Surgeons and Allied Professions § 16— medical malpractice— breach of duty by defendant surgeon—applicability of res ipsa loquitur**

> Application of *res ipsa loquitur* does not operate to impose liability when defendant does not owe plaintiff a duty of care. However, defendant surgeon clearly had a duty to use reasonable care in his operation of a hyfrecator during surgery on plaintiff, and where plaintiff's injury apparently resulted either from defendant surgeon's negligent use of the hyfrecator or from improper maintenance of the hyfrecator by defendant hospital's agents, or both, plaintiff may rely on *res ipsa loquitur* to create a reasonable inference that defendant surgeon breached that duty.

APPEAL by plaintiff from *Preston, Judge*. Orders entered 16 April 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 27 August 1985.

Plaintiff, a minor, entered Cape Fear Valley Hospital to have her adenoids removed and drainage tubes placed in her ears to remedy a persistent ear infection. The surgery was performed by defendant Pantelakos. When plaintiff returned to her hospital room following the surgery, her mother and grandmother noticed a "greenish mark" on her right hand. They had not observed the mark prior to plaintiff's leaving for surgery. They brought the mark to the attention of defendant Pantelakos, who diagnosed it as a burn and prescribed an ointment.

Subsequently, the burn required further treatment. Plaintiff was readmitted to the hospital and skin was grafted from her thigh to the burned area. Scarring resulted.

Alleging negligence, plaintiff seeks to recover for her injury from defendant hospital system and defendant Pantelakos, the

surgeon. From orders granting defendants' motions for summary judgment, plaintiff appeals.

*Carter & Melvin, by Lester G. Carter, Jr., and Stephen R. Melvin, for plaintiff appellant.*

*Clark, Shaw, Clark, Lingle & Anderson, by John G. Shaw and Dougald N. Clark, Jr., for defendant appellee Cumberland County Hospital System, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, Jodee Sparkman King and William H. Moss, for defendant appellee Dr. C. G. Pantelakos.*

WHICHARD, Judge.

The sole question is whether the court erred in granting defendants' motions for summary judgment. A movant is entitled to summary judgment pursuant to N.C. Gen. Stat. 1A-1, Rule 56 when the record, viewed in the light most favorable to the non-moving party, presents " 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Easter v. Hospital*, 303 N.C. 303, 305, 278 S.E. 2d 253, 255 (1981), *quoting Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E. 2d 137, 140 (1980); *Sharpe v. Quality Education, Inc.*, 59 N.C. App. 304, 306-07, 296 S.E. 2d 661, 662 (1982). Issues of negligence should ordinarily be resolved by a jury and are rarely appropriate for summary judgment. *Easter, supra.*

[1, 2] Plaintiff contends that the facts as set out in the depositions, answers to interrogatories, and affidavits submitted to the court are sufficient to invoke the doctrine of *res ipsa loquitur*. We agree. While ordinarily negligence must be proved and cannot be inferred from the fact of an injury, *Kekelis v. Machine Works*, 273 N.C. 439, 442, 160 S.E. 2d 320, 322 (1968), *res ipsa* applies and allows the finder of fact to draw an inference of negligence from the circumstances surrounding an injury when (1) "the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission," (2) "direct proof of the cause of [the] injury is not available," and (3) "the instrumentality involved in the accident is under the defendant's control." *Russell v. Sam Solomon Co.*, 49 N.C. App. 126, 130, 270 S.E. 2d 518, 520 (1980), *disc. rev. denied*, 301 N.C. 722, 274 S.E. 2d 231 (1981). The inference created

by *res ipsa* will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence. *Mitchell v. Saunders*, 219 N.C. 178, 183-84, 13 S.E. 2d 242, 245-46 (1941) (pre-Rules case but *res ipsa* principles applicable). The burden of proving negligence, however, remains with the plaintiff; accordingly, the finder of fact may reject the permissible inference of negligence even though the defendant presents no evidence. *Id.*

Application of *res ipsa* in medical malpractice actions has received special attention, resulting in what our Supreme Court has characterized as a "somewhat restrictive" application of the doctrine. *Id.* at 182, 13 S.E. 2d at 244. The precautions in applying *res ipsa* to a medical malpractice action stem from an awareness that the majority of medical treatment involves inherent risks which even adherence to the appropriate standard of care cannot eliminate. *Id.* This, coupled with the scientific and technical nature of medical treatment, renders the average juror unfit to determine whether plaintiff's injury would rarely occur in the absence of negligence. *Id.* Unless the jury is able to make such a determination plaintiff clearly is not entitled to the inference of negligence *res ipsa* affords. To allow the jury to infer negligence merely from an unfavorable response to treatment would be tantamount to imposing strict liability on health care providers. *See Koury v. Folly*, 272 N.C. 366, 373, 158 S.E. 2d 548, 554 (1968). Once plaintiff's proof has addressed these concerns, however, no bar to application of *res ipsa* in medical malpractice actions exists. *Mitchell*, 219 N.C. at 182, 13 S.E. 2d at 245; *see also Parks v. Perry*, 68 N.C. App. 202, 206-07, 314 S.E. 2d 287, 289 (1984).

[3] We find plaintiff's forecast of evidence sufficient to allow reasonable jurors to find the first prong of the *res ipsa* test, *viz*, that the injury sustained was not an inherent risk of the operation and would rarely if ever occur absent negligence. Plaintiff's failure to present a forecast of expert testimony is not fatal. "There are many known and obvious facts in the realm of common knowledge which speak for themselves, sometimes even louder than witnesses, expert or otherwise." *Gray v. Weinstein*, 227 N.C. 463, 465, 42 S.E. 2d 616, 617 (1947). When, as here, the facts can be evaluated based on common experience and knowledge, expert testimony is not required. *See, e.g., Tice v. Hall*, 310 N.C. 589, 313 S.E. 2d 565 (1984) (expert testimony not required to

establish defendant's breach of a standard of care when sponge is left in plaintiff's body following surgery; N.C. Gen. Stat. 90-21.12, which codifies the "same or similar community" standard of care for health care providers, does not compel otherwise); *Koury*, 272 N.C. 366, 158 S.E. 2d 548 (doctor administered drug to child in contravention to warning labels; expert testimony not required); *Gray*, 227 N.C. 463, 42 S.E. 2d 616 (doctor left child who had swallowed a dozen aspirin unattended for eleven hours; expert testimony not required); *cf. Hoover v. Hospital Inc.*, 11 N.C. App. 119, 180 S.E. 2d 479 (1971) (patient suffered nerve damage following surgery; absence of expert testimony establishing that such injury rarely occurs in absence of negligence held fatal to plaintiff's claim). While undoubtedly risks are inherent in the medical treatment plaintiff received, a jury, based on common knowledge and experience, could reasonably conclude that a burn on a portion of her body not involved in the surgery was not among those risks, and that, but for the negligence of some person(s) in control of her person and the instrumentalities used in her treatment, she would not have been injured. W. Prosser & W. Keeton, *The Law of Torts* Sec. 39 at 256 (5th ed. 1984) (a jury may properly infer medical malpractice from an injury to "an inappropriate part of [a patient's] anatomy" without the aid of expert testimony). *See West Coast Hosp. Ass'n v. Webb*, 52 So. 2d 803 (Fla. 1951); *Hand v. Park Community Hosp.*, 14 Mich. App. 371, 165 N.W. 2d 673 (1968).

While plaintiff did not forecast evidence of what caused her injuries, a probable explanation emerges from defendant Pantelakos' deposition. He testified that during surgery a hyfrecator malfunctioned and had to be replaced. The hyfrecator emits an electrical current and is used to cauterize blood vessels in the area of surgery. Defendant Pantelakos described the malfunctioning hyfrecator as "sparking and putting out a large current." He further stated that he noticed that a ground plate had not been placed under the plaintiff. When in place, a ground plate rests under the patient and a cord leads from the plate to the front of the hyfrecator unit. According to defendant Pantelakos, a ground plate could prevent some of the "sparking and gapping" characteristic of a defective hyfrecator. He also testified that although he is solely responsible for the use of the hyfrecator during surgery, it is the responsibility of operating room personnel to set up

the ground plate. Due to the risks associated with moving an anesthetized patient, defendant Pantelakos could not use a ground plate with the second hyfrecator.

As a safety measure, defendant Pantelakos had previously initiated a policy of using ground plates in conjunction with the hyfrecators at Cape Fear Valley Hospital. It was his experience that the machines often malfunction due to improper maintenance. He also described the hyfrecators as "really cheap" and "poorly adjustable." The use of ground plates, according to defendant Pantelakos, constituted "good medical practice."

While this testimony falls short of establishing the actual causation necessary to prove negligence directly, it identifies a plausible source of plaintiff's injury. Such evidence may be considered in determining whether *res ipsa* should apply. "[*Res ipsa*] must not be supposed to require that plaintiff . . . must rely altogether upon this prima facie showing . . . of negligence, for [s]he may resort to other proof for the purpose of particularizing the negligent act and informing the jury as to the special cause of [her] injury." *Brown v. Manufacturing Co.*, 175 N.C. 201, 203, 95 S.E. 168, 169 (1918). *See* Byrd, *Proof of Negligence in North Carolina: Part I. Res Ipsa Loquitur*, 48 N.C. L. Rev. 452, 473 (1969-70) ("Plaintiff's evidence that tends to limit the possible causes of the accident may facilitate rather than bar the application of *res ipsa*."). *See also Boyd v. Kistler*, 270 N.C. 744, 747, 155 S.E. 2d 208, 210 (1967) (*res ipsa* held inapplicable; absence of evidence indicating "when and how the injury occurred and who caused it" noted by the court).

The second prong of the *res ipsa* test is that direct proof of the cause of injury must be unavailable to plaintiff. *Byrd v. Hospital*, 202 N.C. 337, 343-44, 162 S.E. 738, 741 (1932); *McPherson v. Hospital*, 43 N.C. App. 164, 168, 258 S.E. 2d 410, 413 (1979). Here plaintiff was anesthetized during surgery and can offer no account of her injury. Plaintiff's mother and grandmother can only attest to the fact that her hand was not burned prior to surgery and was immediately afterward. Both defendants deny knowledge regarding plaintiff's injury. This prong of the test thus is met.

[4] The third prong of the *res ipsa* test limits application of the doctrine to situations where the instrumentality causing injury is in defendant's "exclusive" control. *O'Quinn v. Southard*, 269 N.C.

385, 391-92, 152 S.E. 2d 538, 542-43 (1967); *McPherson*, 43 N.C.
App. at 168, 258 S.E. 2d at 413. Defendants argue that plaintiff's
inability to identify the instrumentality with which her injury
was inflicted and her inability to identify a single defendant in ex-
clusive control thereof preclude application of the doctrine. This
literal interpretation of the requirement does not accord with the
purpose of the *res ipsa* doctrine or with the case law which has
applied it.

Once an instrumentality causing injury has been identified, it
may more readily be said that the source of a plaintiff's injury
was in defendant's control. Focus is properly placed on the pres-
ence or absence of defendant's control, and such control often may
be demonstrated without identifying the instrumentality in-
volved. Thus, when it is established that defendant is in control of
the circumstances leading to plaintiff's injury, plaintiff's failure to
identify an instrumentality is not dispositive. *See Gray*, 227 N.C.
463, 42 S.E. 2d 616 (doctor leaves patient unattended for unrea-
sonable period); *Parks*, 68 N.C. App. 202, 314 S.E. 2d 287 (nurse
anesthetist negligently fails to monitor position of patient's arm).

Here plaintiff has identified the hyfrecator as a probable
source of her injury and, as discussed above, defendant Pantela-
kos' testimony regarding the defective hyfrecator strengthens the
inference of negligence arising from the circumstances surround-
ing the injury. Further, defendants were admittedly in control of
plaintiff's person and of all instruments in the operating room. To
require an anesthetized patient to do more than establish the
defendants' control of the circumstances causally linked to the pa-
tient's injury would artificially limit a doctrine intended to apply
when the particular facts surrounding an injury are not known.
*See Pendergraft v. Royster*, 203 N.C. 384, 393, 166 S.E. 285, 289
(1932), *quoting* Medical Jurisprudence (Herzog) (1931), sec. 187 p.
162-63 ("[M]ere proof of a mistake or poor results does not itself
prove malpractice, *but where the injury is received while the pa-
tient is unconscious, [res ipsa] commonly is held to apply because
under such circumstances the patient would not be able to testify
as to what had happened, whereas the physician could.*"). (Em-
phasis supplied by our Supreme Court.)

The purpose of requiring defendant's exclusive control is to
link the inference of negligence which arises from the circum-

stances to the defendant, such that it is more probable than not that the defendant's negligence caused plaintiff's injury. Byrd, *supra*, 48 N.C. L. Rev. at 466. In keeping with its purpose, the exclusivity requirement has not been applied literally to preclude recovery in cases where exclusive control is lacking. *Res ipsa* may be applied against a defendant lacking exclusive control when plaintiff introduces evidence of his own or third parties' lack of negligence. *See Kekelis*, 273 N.C. at 444, 160 S.E. 2d at 323. In addition, *res ipsa* has been applied against multiple defendants. *Mitchell*, 219 N.C. 178, 13 S.E. 2d 242. In *Mitchell* the defendant doctors assisted each other in performing plaintiff's surgery. Plaintiff later discovered that a surgical sponge remained in her body. Finding that each physician had a duty to remove all sponges, the Court applied *res ipsa* against both defendants. 219 N.C. at 180, 13 S.E. 2d at 244.

[5]   Here, as in *Mitchell*, all in control of plaintiff's person at the time of injury are defendants in plaintiff's malpractice action. While in both cases the combined negligence of the defendants may have caused plaintiff's injury, the facts here differ from those in *Mitchell* in that here it is also possible that the negligence of one defendant is the sole cause. We do not believe this distinction warrants a result different from that in *Mitchell*. The majority of other jurisdictions addressing the application of *res ipsa* to multiple defendants are in accord. *See Oldis v. La Societe Francaise De Bienfaisance Mutelle*, 130 Cal. App. 2d 461, 279 P. 2d 184 (1955); *Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P. 2d 687 (1944); *Frost v. Des Moines Still College of Osteopathy & Surgery*, 248 Iowa 294, 79 N.W. 2d 306 (1957); *Matlick v. Long Island Jewish Hosp.*, 25 A.D. 2d 538, 267 N.Y.S. 2d 631 (1966); *Beaudoin v. Watertown Memorial Hosp.*, 32 Wis. 2d 132, 145 N.W. 2d 166 (1966); *Shields v. King*, 40 Ohio App. 2d 77, 317 N.E. 2d 922 (1973); *Anderson v. Somberg*, 67 N.J. 291, 305, 338 A. 2d 1, 8 (1975) ("A wholly faultless plaintiff should not fail in his cause of action by reason of defendants who have it within their power to prove nonculpability but do not do so"); *Kolakowski v. Vonis*, 83 Ill. 2d 388, 415 N.E. 2d 397 (1980); *Swan v. Tygett*, 669 S.W. 2d 590 (Mo. App. 1984). *Accord Myers v. St. Paul-Mercury Indemnity Co.*, 61 So. 2d 901 (La. App. 1952) (here, however, the court held that the presumption created by the application of *res ipsa* was destroyed when defendants produced evidence which established

that they had done everything reasonably careful practitioners, skilled in their respective professions, could have done). *But see Talbot v. Dr. W. H. Groves' Latter-Day Saints Hosp., Inc.*, 21 Utah 2d 73, 440 P. 2d 872 (1968); *Barrett v. Emanuel Hospital*, 64 Or. App. 635, 669 P. 2d 835, *disc. rev. denied*, 296 Or. 237, 675 P. 2d 491 (1983). Still other jurisdictions have reached a similar result by finding that during an operation hospital employees become the temporary servants of the surgeon, exposing the surgeon to liability for their actions based on respondeat superior. *Jensen v. Linner*, 260 Minn. 22, 108 N.W. 2d 705 (1961); *Voss v. Bridwell*, 188 Kan. 643, 364 P. 2d 955 (1961).

We find the following reasoning persuasive:

[I]t is difficult to see how the [*res ipsa*] doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character obviously the result of someone's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. . . . If this were the state of the law of negligence, the courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence, in actions by persons suffering injuries during the course of treatment under anesthesia. But . . . this juncture has not yet been reached, and . . . the doctrine of res ipsa loquitur is properly applicable . . . .

. . . .

Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that [plaintiff] identify any one of them as the person who did the alleged negligent act.

. . . .

[As to identification of the instrumentality which caused the injury,] [i]t should be enough that the plaintiff can show an injury resulting from an external force applied while [s]he lay unconscious in the hospital; this is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make.

. . . .

[W]here a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over [her] body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct.

*Ybarra*, 25 Cal. 2d at 490-94, 154 P. 2d at 689-91.

Our decision does not shift the burden of proof to defendants. That burden at all times remains with the plaintiff. The finder of fact is free to reject the inferences *res ipsa* affords to plaintiff even though defendants present no evidence. At most our decision operates to impose potential liability, in a very limited fact situation, on a defendant who fails to produce evidence establishing lack of negligence. Where defendants are in a position of superior knowledge regarding what transpired and, acting in concert, were in control of the only instrumentalities which could have caused plaintiff's injury, such a reduction in plaintiff's burden of production is justified.

[6] Lastly, relying on *Parks* defendant Pantelakos argues that *res ipsa* should not apply to defeat his motion for summary judgment as he had no "duty to inspect or monitor the position of the [plaintiff's hand]. . . ." 68 N.C. App. at 208, 314 S.E. 2d at 290. He is correct to the extent he asserts that application of *res ipsa* does not operate to impose liability when the defendant does not owe plaintiff a duty of care. *Id.; see generally* Byrd, *supra*, 48 N.C. L. Rev. at 458-66. In *Parks* the plaintiff's injury resulted from a failure to monitor properly the position of plaintiff's arm during surgery. This Court held proper summary judgment in favor of an assistant surgeon who, according to all the evidence, had no duty to monitor the position of the patient's arms. 68 N.C. App. at 208, 314 S.E. 2d at 290-91. Here, however, plaintiff's in-

jury appears to result either from defendant Pantelakos' negligent use of the hyfrecator, or from improper maintenance of the hyfrecator by defendant hospital's agents, or both. Defendant Pantelakos clearly had a duty to use reasonable care in his operation of the hyfrecator and plaintiff may rely on *res ipsa* to create a reasonable inference that he breached that duty.

We hold plaintiff's forecast of evidence sufficient to evoke the doctrine of *res ipsa loquitur*, giving rise to a permissible inference of negligence on the part of either defendant hospital system or defendant doctor or both. The court thus erred in granting defendants' motions for summary judgment. The orders are reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges WELLS and PHILLIPS concur.