NO. COA14-695

NORTH CAROLINA COURT OF APPEALS

Filed:  31 December 2014

BETTY D. WRIGHT,
    Plaintiff

    v.

WAKEMED also known as WAKE COUNTY
HOSPITAL SYSTEM, INC., GURVINDER SINGH
DEOL, M.D., and JULIAN SMITH, PA-C,
    Defendants

Vance County
No. 13 CVS 782

Appeal by plaintiff from order entered 12 March 2014 by Judge Beecher R. Gray in Vance County Superior Court.  Heard in the Court of Appeals 19 November 2014.

*Rogers and Rogers Lawyers, by Michael F. Rogers, for Plaintiff.*

*Yates, McLamb & Weyher, L.L.P., by Dan J. McLamb, Crystal B. Mezzullo, and Andrew C. Buckner, for Defendants.*

ERVIN, Judge.

Plaintiff Betty D. Wright appeals from an order granting Defendants' motion to dismiss Plaintiff's complaint.  **[R51-53]** On appeal, Plaintiff contends that the trial court erred by allowing Defendants' dismissal motion on the grounds that Plaintiff's complaint was not certified as required by N.C. Gen. Stat. § 1A-1, Rule 9(j) despite the fact that Plaintiff had attempted to assert a medical malpractice claim against

Defendants. After careful consideration of Plaintiff's challenge to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

On 21 September 2010, Plaintiff was admitted to WakeMed hospital for spinal surgery. Following the procedure, Plaintiff was discharged by WakeMed's Surgical and Recovery ACUTE unit and transferred to the WakeMed REHAB unit on 28 September 2010.

At the time of the transfer, Plaintiff was provided with a document entitled "WakeMed REHAB Admission Orders; Admission Medication Orders," which contained a list of medications that had been prescribed for Plaintiff, including prescription and general medications that had not been included in a previous medication list prepared by WakeMed ACUTE for Plaintiff. More specifically, Defendants negligently directed that Xanax, Geodon and Lithium be included in the "Admission Medication Orders," resulting in the ingestion of these medications and an episode of somnolence and lethargy from which Plaintiff suffered for several days.

On 8 August 2013, Plaintiff filed a complaint seeking the recovery of damages for personal injury from Defendants in which Plaintiff alleged that she was entitled to prevail on a *res ipsa*

*loquitur* theory. On 16 October 2013, Defendants filed an answer in which they denied the material allegations set out in Plaintiff's complaint and sought to have Plaintiff's complaint dismissed on a number of grounds, including a failure to state a claim upon which relief could be granted. After a hearing held on 3 March 2014 for the purpose of considering the issues raised by Defendants' dismissal motion, the trial court entered an order dismissing Plaintiff's complaint. Plaintiff noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

In her sole challenge to the trial court's order, Plaintiff contends that the trial court erred by granting Defendant's dismissal motion. More specifically, Plaintiff contends that the trial court erred by failing to determine that she had properly alleged that she was entitled to relief on *res ipsa loquitur* grounds.[1] We do not find Plaintiff's argument persuasive.

## A. Standard of Review

When ruling on a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), the trial court is required to

---

[1]Although Plaintiff seems to suggest that she stated a claim for relief on "general negligence" as well as *res ipsa loquitur* grounds, she has not advanced any "general negligence" argument in her brief. As a result, our decision in this case will focus solely on whether Plaintiff's complaint stated a valid *res ipsa loquitur* claim.

determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In the course of analyzing the sufficiency of the plaintiff's pleading, the complaint must be liberally construed and "should not be dismissed for failure to state a claim unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987). "On appeal of a [] motion to dismiss [lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)], this Court conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 429 (internal quotation marks and citation omitted), *disc. review denied and appeal dismissed*, 361 N.C. 425, 647 S.E.2d 98, *cert. denied*, 361 N.C. 690, 652 S.E.2d 257 (2007).

## B. Applicable Legal Principles

N.C. Gen. Stat. § 1A-1, Rule 9(j) provides, in pertinent part, that:

> Any complaint alleging medical malpractice
> by a health care provider pursuant to [N.C.

Gen. Stat. §] 90-21.11(2)a. in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under [N.C. Gen. Stat. § 8C-1,] Rule 702 [] and who is willing to testify that the medical care did not comply with the applicable standard of care; [or]

. . . .

(3) The pleading alleges facts establishing negligence under the existing common law doctrine of res ipsa loquitur.

As a result, given that Plaintiff's complaint lacks a certification in the form required by N.C. Gen. Stat. § 1A-1, Rule 9(j), the trial court correctly dismissed that pleading unless Plaintiff successfully asserted a claim based on the doctrine of *res ipsa loquitur*.

"*Res ipsa loquitur* (the thing speaks for itself) simply means that the facts of the occurrence itself warrant an inference of defendant's negligence, i.e., that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking." *Sharp v. Wyse*, 317 N.C. 694, 697, 346 S.E.2d 485, 487 (1986) (quotation marks, citation, and emphasis omitted). "The doctrine of *res ipsa loquitur* applies when (1)

direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health System*, __ N.C. App. __, __, 727 S.E.2d 877, 879 (internal quotation marks and citation omitted), *disc. review dismissed*, 366 N.C. 247, 731 S.E.2d 421 (2012). Thus, in order to successfully assert a claim based on the doctrine of *res ipsa loquitur*, a "plaintiff must [be] able to show – without the assistance of expert testimony – that the injury was of a type not typically occurring in the absence of some negligence by defendant." *Diehl v. Koffer*, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (emphasis omitted). As a result of the fact that the doctrine of *res ipsa loquitur* only applies in the absence of direct proof of the cause of the plaintiff's injury, a plaintiff is not entitled to rely on it in the event that there is direct evidence of the reason that the plaintiff sustained the injury for which he or she seeks relief. *Robinson v. Duke University Health Systems, Inc.*, __ N.C. App. __, __, 747 S.E.2d 321, 330 (2013), *disc. review denied*, __ N.C. __, 755 S.E.2d 618 (2014).

In order for the doctrine of *res ipsa loquitur* "to apply in a medical malpractice claim, a plaintiff must allege facts from

which a layperson could infer negligence by the defendant based on common knowledge and ordinary human experience." *Smith v. Axelbank*, __ N.C. App. __, __, 730 S.E.2d 840, 843 (2012). "Our Courts have consistently found that *res ipsa loquitur* is inappropriate in the usual medical malpractice case, where the question of injury and the facts in evidence are peculiarly in the province of expert opinion." *Robinson*, __ N.C. App. at __, 747 S.E.2d at 329 (internal quotation marks and citation omitted). Nevertheless,

> where proper inferences may be drawn by ordinary men from approved facts which give rise to *res ipsa loquitur* without infringing this principle, there should be no reasonable argument against the availability of the doctrine in medical and surgical cases involving negligence, just as in other negligence cases, where the thing which caused the injury does not happen in the ordinary course of things, where proper care is exercised.

*Mitchell v. Saunders*, 219 N.C. 178, 182, 13 S.E.2d 242, 245 (1941).

### C. Validity of Trial Court's Ruling

In granting Defendants' dismissal motion, the trial court stated that:

> 6.   Under North Carolina law, the doctrine *Res Ipsa Loquitur* is limited to situations in which the plaintiff can show--without the assistance of expert medical testimony--that the plaintiff's injury was a result of a negligent act by the defendant(s) and that

the injury would not have occurred in the absence of negligence or dereliction of a relevant duty on the part of the defendant(s). *Res Ipsa Loquitur* is not appropriate when the question of injury is peculiarly in the province of expert opinion.

7. The allegations in plaintiff's Complaint involve purported negligence in medication reconciliation and in the administration of certain medications which the Complaint alleges caused the plaintiff to become somnolent and lethargic. Purported negligence as to these issues cannot be inferred absent expert testimony and, as such, the doctrine of *res ipsa loquitur* does not apply under North Carolina law.

Plaintiff's contention that she has stated a claim for relief on the basis of the doctrine of *res ipsa loquitur* fails for multiple reasons.

In her complaint, Plaintiff has alleged that the injuries for which she seeks redress were sustained as the result of an explicitly delineated series of events. More specifically, Plaintiff has alleged that her injuries resulted from the ingestion of specific medications that she should not have received and that her ingestion of these medications resulted from the fact that medications that she had not been prescribed were included on the materials that accompanied her transfer from WakeMed ACUTE to WakedMed REHAB. In support of this assertion, Plaintiff produced a list of the medications that

were originally prescribed for her and "Admission Medications Orders" signed by Dr. Deol showing that Xanax, Geodon, and Lithium had been added to the list of medications that she had originally been instructed to take at or about the time of her transfer. As a result, Plaintiff has explicitly alleged that she was injured in a specific manner by a specific act of negligence, a fact that bars her from any attempt to rely on the doctrine of *res ipsa loquitur*.

In seeking to persuade us to reach a different result, Plaintiff contends that she had not alleged the existence of direct proof concerning the manner in which her injuries occurred given that the drugs that she claims had been erroneously administered to her had metabolized and had left her body by the time of her discharge, thereby depriving her of scientific evidence of their presence in her body. We do not believe that this fact has any bearing on our analysis given that the issue raised by Plaintiff's claim is not whether Plaintiff actually ingested the medications in question, but rather how Plaintiff came to have ingested the medications and what impact their ingestion had on her. As we have already noted, Plaintiff alleged that a specific error that occurred during the transfer process resulted in the administration of these medications to her. Thus, the absence of chemical

evidence that Plaintiff ingested the medications upon which her claim rests does not suffice to establish that Plaintiff is entitled to rely on the doctrine of *res ipsa loquitur*.

In addition, we do not believe that Plaintiff is entitled to rely on the doctrine of *res ipsa loquitur* in this case given that expert testimony would be necessary to establish the cause of the injury that Plaintiff claims to have suffered. In *Axelbank*, the plaintiff alleged that she had been injured as the result of the fact that the defendant negligently prescribed a particular medication for her and asserted that the existence of negligence on the part of the defendant could be established without the benefit of expert testimony, so that the plaintiff was entitled to proceed on a *res ipsa loquitur* theory. *Axelbank*, __ N.C. App. at __, 730 S.E.2d at 843. In rejecting the plaintiff's argument, this Court concluded that "a lay person would not be able to determine that plaintiff's injury was caused by Seroquel or be able to determine that Dr. Axelbank was negligent in prescribing the medication to plaintiff without the benefit of expert witness testimony." *Id.* In this case, as in *Axelbank*, a jury would not be able to determine whether Plaintiff's injury resulted from the ingestion of Xanax, Geodon, and Lithium without having the benefit of expert witness testimony, since a lay juror would not necessarily know what

these medications are, how they affect the human body, and how they might be expected to affect Plaintiff specifically.

In Plaintiff's view, *Axelbank* has no bearing on the proper resolution of this case since *Axelbank* involved a situation in which the defendant allegedly prescribed the wrong medication while this case involves a situation in which errors were made in transferring a list of medications from one document to another. According to Plaintiff, one need not be a medical expert to know that the medication list was erroneously transferred and that this error constituted negligence. In making this argument, however, Plaintiff appears to confuse the meaning of "negligence" as used in the legal context with the meaning of the same word as used in common parlance. Although the inaccurate copying of a medication list might be understood as a negligent act, that fact, standing alone, does not suffice to establish a valid negligence-based claim for the recovery of damages, which also requires proof that the negligent act on which the plaintiff's claim rests resulted in the injury for which the plaintiff seeks redress. *Gibson v. Ussery*, 196 N.C. App. 140, 143, 675 S.E.2d 666, 668 (2009). Assuming, without in any way deciding, that Plaintiff can establish a deviation from the applicable standard of care by showing the existence of the copying error upon which she relies, Plaintiff cannot

demonstrate that the injuries of which she complains resulted from this specific negligent act in the absence of expert testimony.[2] Simply put, since "the average juror [is] unfit to determine whether [P]laintiff's [somnolence and lethargy] would rarely occur in the absence of" the ingestion of Xanax, Geodon, and Lithium, *Schaffner v. Cumberland County Hosp. System, Inc.,* 77 N.C. App. 689, 692, 336 S.E.2d 116, 118 (1985), *disc. reviews denied*, 316 N.C. 195, 341 S.E.2d 578-79 (1986), Plaintiff's attempt to distinguish our decision in *Axelbank* is not persuasive. As a result, since Plaintiff has not established that she successfully pled a claim against Defendants on the basis of the doctrine of *res ipsa loquitur*, the trial court correctly dismissed her complaint.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Plaintiff's challenges to the trial court's order have

---

[2]In addition, we note that, even if a lay person could be expected to understand the effect that the specific medications that Plaintiff claims to have negligently ingested would have on the human body, a successful plaintiff would still be required to obtain expert proof that her injuries resulted from the ingestion of these specific medications given that the "Admission Medication Orders" indicate that over a dozen medications had been prescribed for Plaintiff and that expert medical testimony would be necessary to explain the interactions among this collection of medications and whether the injuries that Plaintiff claims to have sustained could have resulted from the ingestion of one or more of these other medications.

merit.   As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ELMORE and DAVIS concur.