JESSE WILLIAMS, Plaintiff-Appellant v. 100 BLOCK ASSOCIATES, LTD.
PARTNERSHIP and OTIS ELEVATOR COMPANY, Defendant-Appellees

No. COA98-374

(Filed 6 April 1999)

1. Negligence— malfunctioning elevator—building owner—no knowledge of prior problems

The trial court did not err by granting summary judgment for defendant building owner in a personal injury action alleging negligent maintenance of an automatic elevator where plaintiff neither offered expert testimony nor forecast any evidence of any knowledge by or notice to the owner of prior problems with the

**WILLIAMS v. 100 BLOCK ASSOC., LTD.**

[132 N.C. App. 655 (1999)]

elevators. Any knowledge by a security guard employed by an independent contractor was not imputed to the owner.

**2. Negligence— malfunctioning elevator—no notice of prior problems to elevator company**

The trial court did not err by granting summary judgment for defendant elevator company in a personal injury action alleging negligent maintenance of an automatic elevator where defendant offered the affidavit of its regional field engineer that service had been performed pursuant to a maintenance agreement and plaintiff neither offered a counter-affidavit nor any forecast of evidence that defendant had been notified of prior problems or was negligent in repairing the elevators.

**3. Negligence— res ipsa loquitur—malfunctioning elevator**

The trial court did not err by not applying the doctrine of res ipsa loquitur to the owner of an office building in a personal injury action alleging negligent maintenance of an automatic elevator where plaintiff failed to offer evidence tending to establish exclusive control and management.

Appeal by plaintiff from order entered 12 November 1997 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 29 October 1998.

*Hinton, Hewett & Wood, P.A., by Alan B. Hewett and J. Franklin Wood, Jr., for plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by O. Craig Tierney, Jr. and Beth Y. Smoot, for defendant-appellee 100 Block Associates, Ltd. Partnership.*

*Maupin, Taylor & Ellis, P.A., by Thomas W. H. Alexander and Kevin W. Benedict, for defendant-appellee Otis Elevator Company.*

McGEE, Judge.

Plaintiff filed a complaint for personal injury on 25 June 1996 alleging negligent maintenance of an automatic elevator. Plaintiff was employed by United Cleaning Specialist Corporation, which provided cleaning services to the First Union Capital Center in Raleigh, North Carolina. Defendant 100 Block Associates, Ltd. Partnership (100 Block) owned the First Union Capital Center. Defendant Otis

Elevator Company (Otis Elevator) had a contract with 100 Block to service and maintain the automatic elevators in the First Union Capital Center.

Plaintiff alleged in his complaint that he was a passenger on elevator number five in the First Union Capital Center at about 9:00 p.m. on 2 December 1994. Plaintiff stated that "the elevator started moving back and forth from the 24th to 25th floors, stopping suddenly on each floor, making a loud banging noise . . . causing the defendant [sic] to be suddenly hurled in a hard manner to the floor of the elevator several times causing him to injure his knee."

Plaintiff sought damages for past and future medical expenses, pain and suffering, and lost wages. Defendant 100 Block filed a motion for summary judgment on 27 June 1997. Defendant Otis Elevator filed a motion for summary judgment on 31 July 1997. The trial court granted defendants' motions for summary judgment in an order entered 12 November 1997. Plaintiff appeals.

## I. 100 BLOCK

[1] Plaintiff argues the trial court erred in granting defendants' motions for summary judgment, contending that "[i]n the present case . . . there are genuine issues of material fact."

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law.' " *Snipes v. Jackson,* 69 N.C. App. 64, 71-72, 316 S.E.2d 657, 661 (1984); N.C. Gen. Stat. § 1A-1, Rule 56(c). "In ruling on [a motion for summary judgment] the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." *Snipes* at 72, 316 S.E.2d at 661 (citation omitted).

Plaintiff argues that "[t]here exist genuine issues of material fact as to the existence of a duty owed to plaintiff by defendant 100 Block Associates and the breach of that duty, where plaintiff [was] an invitee of defendant[.]" We disagree.

Our Supreme Court recently articulated a "new approach to premises liability in North Carolina" in *Nelson v. Freeland,* 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998). The Court summarized North Carolina law concerning premises liability, stating:

**WILLIAMS v. 100 BLOCK ASSOC., LTD.**

[132 N.C. App. 655 (1999)]

[T]he standard of care a landowner owes to persons entering upon his land depends upon the entrant's status, that is, whether the entrant is a licensee, invitee, or trespasser. An invitee is one who goes onto another's premises in response to an express or implied invitation and does so for the mutual benefit of both the owner and himself. . . . A licensee, on the other hand, "is one who enters onto another's premises with the possessor's permission, express or implied, solely for his own purposes rather than the possessor's benefit." The classic example of a licensee is a social guest. Lastly, a trespasser is one who enters another's premises without permission or other right.

*Nelson* at 617, 507 S.E.2d at 883-84 (footnote omitted) (citations omitted).

Our Supreme Court said in *Nelson* that a landowner specifically owed an invitee the duty "to use ordinary care to keep his property reasonably safe and to warn of hidden perils or unsafe conditions that could be discovered by reasonable inspection and supervision." *Nelson* at 618, 507 S.E.2d at 884 (citation omitted). As to licensees, a landowner's duty has been "to refrain from doing the licensee willful injury and from wantonly and recklessly exposing him to danger." *Id.* With regard to trespassers, "a landowner need only refrain from the willful or wanton infliction of injury." *Id.*

Our Supreme Court further stated that past premises liability decisions have

caused confusion amongst our citizens and the judiciary—a confusion exaggerated by the numerous exceptions and sub-classifications engrafted into it. Lastly, the trichotomy is unjust and unfair because it usurps the jury's function either by allowing the judge to dismiss or decide the case or by forcing the jury to apply mechanical rules instead of focusing upon the pertinent issue of whether the landowner acted reasonably under the circumstances.

*Nelson* at 631, 507 S.E.2d at 892.

Thus, the Court eliminated "the distinction between licensees and invitees" and established "a standard of reasonable care toward all lawful visitors." *Id.*

Adoption of a true negligence standard eliminates the complex, confusing, and unpredictable state of premises-liability law and

## WILLIAMS v. 100 BLOCK ASSOC., LTD.

[132 N.C. App. 655 (1999)]

replaces it with a rule which focuses the jury's attention upon the pertinent issue of whether the landowner acted as a reasonable person would under the circumstances.

> In so holding, we note that we do not hold that owners and occupiers of land are now insurers of their premises. Moreover, we do not intend for owners and occupiers of land to undergo unwarranted burdens in maintaining their premises. Rather, we impose on them only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.

*Nelson* at 631-32, 507 S.E.2d at 892.

The Supreme Court did not find "compelling reasons to apply this rule prospectively only and therefore [gave] it both prospective and retrospective application." *Nelson* at 633, 507 S.E.2d at 893.

In the case before us, plaintiff was present in the First Union Capital Center because of his duty to his employer, United Cleaning Specialist Corporation. As such, plaintiff was a "lawful visitor[]" and entered 100 Block's building "under color of right." *Id.* at 631-32, 507 S.E.2d at 892. The question, as framed by *Nelson*, is "whether the landowner acted as a reasonable person would under the circumstances." *Id.* at 632, 507 S.E.2d at 892.

Defendant 100 Block submitted the affidavit of Melony Girton, the property manager for 100 Block at the time of plaintiff's accident. Girton stated: "I am familiar with the injury reported by the plaintiff and I recall that I *had no knowledge* of any problem with any of the elevators at the First Union building prior to the incident complained of by the plaintiff." (Emphasis added.)

Plaintiff also submitted the affidavit of Tim Hunter, a security guard with Barton Protective Services, Inc., who was stationed at the First Union Capital Center. In his affidavit, Hunter stated: "I am familiar with the injury reported by the plaintiff and I recall that I had knowledge of problems with the elevators at the First Union building prior to the incident complained of by the plaintiff." In this affidavit, unlike Girton, Hunter acknowledged that he had notice of prior problems with the elevators.

Plaintiff cites *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E.2d 721 (1972), for the proposition that "[a] principal is chargeable with and bound by the knowledge of or notice to his agent, received while

the agent is acting as such within the scope of his authority and in reference to which his authority extends." *Id.* at 60, 187 S.E.2d at 728 (citation omitted). Plaintiff argues that Hunter is an agent of 100 Block, and that his notice should be imputed to 100 Block. We disagree.

In *Roberts*, a principal-agent relationship was found because "[t]he allegations in the complaint and the admissions in the answer established the relationship of principal and agent between defendant . . . and the corporate defendant at the times plaintiff complained of." *Roberts* at 60, 187 S.E.2d at 728.

In the present case, plaintiff alleged in his complaint that "the defendants, their agents, servants, and/or employees were . . . negligent"; however, plaintiff did not specifically allege the existence of a principal-agent relationship between Hunter and 100 Block, nor did 100 Block refer to such a relationship in its answer.

"There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Vaughn v. Dept. of Human Resources*, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978) (citations omitted), *aff'd*, 296 N.C. 683, 252 S.E.2d 792 (1979).

In *Simms v. Stores, Inc.*, 285 N.C. 145, 203 S.E.2d 769 (1974), plaintiff attempted to serve a summons on defendant, a retail department store, by delivering the summons to the store's security guard. Our Supreme Court held that the summons was not properly served because the security officer was not employed by defendant store, but rather was employed by an independent contractor who was rendering services to defendant store. The Court agreed with the trial court's findings of fact that:

> [The security guard] was not an employee or agent of defendant. She neither received nor handled any money for defendant. She exercised no control whatever over any of defendant's employees; nor was she under the supervision, direction or control of any officer or employee of defendant. [The security guard] was employed as a security officer by Link Security, Inc. . . . Link was then under contract to furnish defendant security officers to protect its property, and it had assigned [the security guard] to defendant's store . . . . She was subject to reassignment and relocation by Link at any time. With reference to her working hours,

duties, and the manner in which she performed those duties she was responsible only to Link.

*Simms* at 147, 203 S.E.2d at 771. Further, our Court has previously stated:

> If the requisite right to control is found to exist, then an employer is held liable, albeit vicariously, for the negligent acts of its agents, servants, or employees which cause injuries to third persons; but an employer is not liable to third parties for the negligence of an independent contractor.
>
> Whether one is an independent contractor or an employee is a mixed question of law and fact. The factual issue is: What were the terms of the parties' agreement? Whether that agreement establishes a master-servant or employer-independent contractor relationship is ordinarily a question of law.

*Yelverton v. Lamm*, 94 N.C. App. 536, 538, 380 S.E.2d 621, 623 (1989) (citations omitted). *See also Hendricks v. Fay, Inc.*, 273 N.C. 59, 62, 159 S.E.2d 362, 365-66 (1968).

Plaintiff introduced no evidence tending to show that Hunter was an agent or employee of 100 Block. Included in the record on appeal is the incident report which Hunter filled out immediately after the accident. The bottom of each page of the report reads "Barton Protective Services Inc.," and lists the address of the security company. The evidence tends to show that Hunter, like the security guard in *Simms*, was employed not by defendant 100 Block, but by Barton Protective Services, Inc., an independent contractor that rendered services to 100 Block. Any knowledge of or notice to Hunter of prior problems with the elevators is not imputed to 100 Block.

As evidenced by Girton's affidavit, plaintiff has failed to show that: (1) 100 Block had notice of a problem with the elevator, and (2) 100 Block failed to exercise reasonable care in contacting Otis Elevator about the maintenance of the elevator. "To survive a motion for summary judgment, the nonmoving party must . . . " 'forecast sufficient evidence of all essential elements of [his] claim []' " to make a *prima facie* case at trial.' " *Estate of Mullis v. Monroe Oil Co.*, 349 N.C. 196, 203, 505 S.E.2d 131, 136 (1998) (citations omitted). In *Adams v. Western Host, Inc.*, 779 P.2d 281 (Wash. Ct. App. 1989), plaintiff was injured when an elevator misleveled, and he filed suit against the maintenance company for his injuries. Plaintiff presented expert testimony in support of his contention that the maintenance

company had been negligent in repairing the elevator. The trial court granted summary judgment for the maintenance company. The appellate court affirmed, stating that the plaintiff's expert testimony was insufficient to establish a prima facie case of the maintenance company's negligence. The court stated: "To rebut a properly supported summary judgment motion, the nonmoving party must set forth specific facts showing a genuine issue for trial." *Id.* at 284. In the case before our Court, plaintiff did not offer expert testimony, nor did he forecast evidence of any knowledge by or notice to 100 Block of prior problems with the elevators, thereby failing to create a genuine issue of material fact.

## II. OTIS ELEVATOR

[2] Plaintiff argues the trial court erred in granting summary judgment to defendant Otis Elevator. Specifically, plaintiff argues that there is a question as to "the existence of a duty . . . and the breach of that duty, where plaintiff [was] injured while using an automatic elevator which defendant [had] contracted to maintain in proper working order." We disagree.

Otis Elevator manufactured the elevators in the First Union Capital Center and contracted with 100 Block to maintain and repair those elevators. The maintenance contract between Otis Elevator and 100 Block provides, in part:

> It is agreed that [Otis Elevator does] not assume possession or control of any part of the Units, that such remains yours solely as owner, lessee, or agent of the owner or lessee, and that you are solely responsible for all requirements imposed by any federal, state or local law, ordinance or regulation.

> . . .

> If any Unit is malfunctioning or in a dangerous condition, you should immediately notify [Otis Elevator] using the 24-hour OTIS-LINE service. Until we correct the problem, you agree to remove the Unit from service and take all necessary precautions to prevent access or use.

Pursuant to this contract, in the event of an elevator malfunction, 100 Block could notify Otis Elevator by calling the OTISLINE dispatch center. There is no evidence in the record of any call by 100 Block to OTISLINE prior to plaintiff's injury.

**WILLIAMS v. 100 BLOCK ASSOC., LTD.**

[132 N.C. App. 655 (1999)]

At the summary judgment hearing, Otis Elevator tendered the affidavit of Lee Hartley, a regional field engineer for Otis Elevator. Hartley stated in his affidavit that:

> [H]e [had] been an employee of the defendant Otis Elevator Company for 29 years . . . that he is familiar with how maintenance is conducted by Otis Elevator Company on the elevators located in the First Union Capitol Center, Raleigh, NC . . . that during all times complained of in the complaint in this action service performed by defendant Otis Elevator Company on the elevators in question were [sic] done pursuant to the maintenance agreement attached hereto as Exhibit A; that based on affiant's investigation of this matter it is his opinion that Otis complied fully with the requirements of the maintenance contract in all respects.

Plaintiff did not respond to Hartley's affidavit. Plaintiff neither offered a counter affidavit, nor forecast any evidence that Otis Elevator had been notified of any prior problems with the elevators, or that Otis Elevator may have been negligent in repairing the elevators.

"[S]ummary judgment may be granted in a negligence action where there are no genuine issues of material fact and the plaintiff fails to show one of the elements of negligence." *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995) (citations omitted), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 715 (1996).

We, therefore, hold the trial court did not err in granting defendant Otis Elevator's motion for summary judgment.

### III. RES IPSA LOQUITUR

[3] Plaintiff argues the trial court erred "by not applying the doctrine of *res ipsa loquitur*, as to defendant 100 Block Associates[.]" We disagree.

The doctrine of " '*[r]es ipsa loquitur*, in its distinctive sense, permits negligence to be inferred from the physical cause of an accident, without the aid of circumstances pointing to the responsible human cause.' " *Kekelis v. Machine Works*, 273 N.C. 439, 443, 160 S.E.2d 320, 323 (1968) (citation omitted).

In order to invoke the doctrine of *res ipsa loquitur* plaintiff must show, "(1) that there was an injury, (2) that the occurrence causing the injury is one which ordinarily doesn't happen without

**WILLIAMS v. 100 BLOCK ASSOC., LTD.**

[132 N.C. App. 655 (1999)]

negligence on someone's part, (3) that the instrumentality which caused the injury was under the exclusive control and management of the defendant."

*Johnson v. City of Winston-Salem*, 75 N.C. App. 181, 182, 330 S.E.2d 222, 223 (1985) (citation omitted), *rev'd on other grounds*, 315 N.C. 384, 338 S.E.2d 105 (1986).

In *Bryan v. Elevator Co.*, 2 N.C. App. 593, 163 S.E.2d 534, (1968), our Court stated that:

> "The rule of *res ipsa loquitur* never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the *only* probable tortfeasor. In such a case, unless *additional evidence*, which eliminates negligence on the part of all others who have had control of the instrument causing the plaintiff's injury is introduced, the court must nonsuit the case."

*Bryan* at 596, 163 S.E.2d at 536 (quoting *Kekelis* at 444, 160 S.E.2d at 323) (emphasis in original).

In *Kekelis*, plaintiff was injured while operating a yarn processing machine installed by defendant for plaintiff's employer, and plaintiff argued that the doctrine of *res ipsa loquitur* applied to her case. Our Supreme Court affirmed the trial court's judgment for defendants, stating:

> In this case, plaintiff's evidence is sufficient to allow the jury to find that she received an electric shock from a machine which defendant had installed between 9 and 18 hours earlier, and that the shock injured her. She has, however, offered no evidence tending to show any fault on the part of defendant. Therefore, unless—as plaintiff contends—the mere fact of injury, under the circumstances here disclosed, is evidence from which the jury may infer defendant's lack of due care, the judgment of nonsuit must be sustained.

*Kekelis* at 442-43, 160 S.E.2d at 322 (citation omitted).

Plaintiff alleged in his complaint, and Otis Elevator admitted in its answer, that Otis Elevator had a maintenance contract with 100 Block "to keep, service, and maintain [the elevators] in good repair[.]" In requests for admissions presented to Otis Elevator by 100 Block, 100 Block requested Otis Elevator to "[a]dmit that 100 Block Associates did not control the manner, method or the details of completing the

tasks and duties of Otis Elevator contained in the [maintenance] agreement[.]" Otis Elevator admitted in its response that, "as an independent contractor, *it* controlled the manner and methods of the maintenance, inspections and testing which it performed on the elevators pursuant to the [maintenance] contract[.]" (Emphasis added.)

Plaintiff has failed to offer evidence tending to establish the third element of the doctrine of *res ipsa loquitur*, as set forth in *Johnson*. *See Johnson* at 182, 330 S.E.2d at 223. As to the third element, that "the instrumentality causing the injury was in the exclusive control and management of defendant," plaintiff has forecast no evidence tending to establish 100 Block "as the only probable tortfeasor." *Bryan* at 596, 163 S.E.2d at 536. As in *Kekelis*, the mere fact that plaintiff was injured does not allow an inference that 100 Block failed to exercise due care.

We affirm the order of the trial court granting defendant 100 Block's motion for summary judgment and defendant Otis Elevator's motion for summary judgment.

Affirmed.

Judges JOHN and WALKER concur.