SHIRLEY EVANS HARRIS, Plaintiff v. TRI-ARC FOOD SYSTEMS, INC. (d/b/a BOJANGLES) and PROSTRUCTION, INC., Defendants

No. COA03-1106

(Filed 20 July 2004)

## 1. Premises Liability— defective restaurant ceiling—latent defect—no knowledge or reason to discover

There was no genuine issue of material fact as to whether a restaurant owner was negligent in failing to discover a defective ceiling or in creating the dangerous condition. Summary judgment was properly granted for defendant.

### 2. Negligence— res ipsa loquiter—defective ceiling—exclusive control not shown

Res ipsa loquiter did not apply to a negligence action in which a ceiling fell on a restaurant patron where plaintiff did not show that the restaurant owner had exclusive control of the instrumentality that caused the injury (a defect in the ceiling construction). Summary judgment for defendant was affirmed.

Appeal by plaintiff from an order entered 6 February 2003 by Judge David Q. LaBarre in Granville County Superior Court. Heard in the Court of Appeals 24 May 2004.

*Currin & Dutra, L.L.P., by Lori A. Dutra and Amy R. Edge, for plaintiff-appellant.*

*Ragsdale Liggett, P.L.L.C., by John M. Nunnally, Andrew C. Buckner and George R. Ragsdale, for defendant-appellee Tri-Arc Food Systems, Inc.*

HUNTER, Judge.

Shirley Evans Harris ("plaintiff") appeals from an order filed 6 February 2003 granting summary judgment in favor of Tri-Arc Food Systems, Inc. ("defendant").[1] We conclude (1) there was no genuine issue of material fact raised by the evidence as to whether defendant was negligent, and (2) the doctrine of *res ipsa loquitur* does not apply to the case *sub judice*. Accordingly, summary judgment was properly granted and we affirm the order of the trial court.

The evidence contained in the record on appeal shows that on 12 April 1999, plaintiff was a customer in a Bojangles restaurant owned by defendant in Creedmoor, North Carolina. As plaintiff sat down inside the restaurant to eat her lunch, a portion of the restaurant's ceiling collapsed, falling on to plaintiff and causing serious injury to her head, neck, and shoulders. As a result of these injuries plaintiff incurred medical expenses of over $8,000.00 and lost wages in excess of $9,000.00. In addition, plaintiff continues to have chronic neck and shoulder pain, as well as limited use of her left arm, and anticipates

---

1. An order filed 28 May 2003 granted summary judgment in favor of Prostruction, Inc. ("Prostruction"), which resolved all of plaintiff's remaining claims and thus the appeal of the 6 February 2003 order is now properly before us. Plaintiff, however, has not appealed the 28 May 2003 order granting summary judgment in favor of Prostruction and that order is therefore not before us on appeal.

needing future medical treatment and incurring future loss of earnings and decreased earning capacity.

According to defendant's responses to interrogatories, the last time the restaurant's ceiling would have been inspected was by the building inspector who inspected and approved the building for occupancy and it was not a part of defendant's procedures to regularly inspect the ceiling. In addition, defendant was not aware of any defect or condition existent in the construction of the ceiling. An investigation conducted by defendant's insurance carrier concluded that:

> The dining room has a tray ceiling and the facade is on the front left and right walls of the ceiling area. . . . The facade was fastened to a 2 x 4 plate with trim nails approximately 2' - 2 ½' feet apart, and with a small amount of construction adhesive. These fasteners held up two 1 x 9 oak boards, oak shoe molds, and fluorescent lights which ran inside the facade. Also the weight of the acoustic ceiling and light fixtures were placed on the horizontal oak board as described. The ceiling tiles/grid and light fixtures were supported on the left and right wall areas by metal straps fastened to the roof joists. This appeared to have effectively relieved the weight of these items from the horizontal board. The grid tiles, 5 chandeliers, and duct work on the front elevation of the tray ceiling did not have any metal supports. Essentially, the horizontal oak board was supporting all this weight, which was fastened only with trim nails and very little construction adhesive. Consequently, the entire facade collapsed when the front portion let loose. The front portion of the facade is tied into the right and left portions by the oak shoe mold, wiring for the fluorescent fixtures, and the L-channel for the ceiling tile.

Kurt Hendrickson ("Hendrickson") was the president of Prostruction, the general contractor for the construction of the Bojangles restaurant. Hendrickson testified in a deposition that the trim work on the ceiling was performed by Scott Brothers, a subcontractor. After the incident, Hendrickson contacted Scott Brothers and was told that the only way the trim would have fallen was if someone had pulled away, or ripped down, the molding. Gary Thiede, who performed the repairs for defendant, told Hendrickson that he did not know what caused the collapse. Hendrickson also testified that based on his knowledge and experience in the construction industry, the construction on the ceiling conformed to industry standard practices.

The issues presented on appeal are whether (I) there is a genuine issue of material fact as to whether defendant failed to maintain ordinary care in protecting its customers from the unsafe condition, and (II) the doctrine of *res ipsa loquitur* is applicable to this case.

I.

**[1]** Plaintiff first contends that summary judgment was improperly granted for defendant in this case because there was a genuine issue of material fact as to whether defendant breached its duty of care to plaintiff either by creating the dangerous condition with the ceiling or by failing to properly inspect the ceiling.

"Summary judgment is appropriate when all the evidentiary materials before the court 'show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Bolick v. Bon Worth, Inc.*, 150 N.C. App. 428, 429, 562 S.E.2d 602, 603 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "The burden is on the party moving for summary judgment to show the absence of any genuine issue of fact and his entitlement to judgment as a matter of law." *Id.*

> "The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim."

*Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)).

> In a negligence action, to survive a motion for summary judgment, plaintiff must establish a *prima facie* case by showing: "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances."

*Bolick*, 150 N.C. App. at 430, 562 S.E.2d at 603 (quoting *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995)).

Under the Restatement (Second) of Torts, a possessor of land who carefully selects an independent contractor to construct a building on his land is subject to liability for harm caused to invitees by the

negligent acts of the contractor. Restatement (Second) of Torts, § 422 (1965). This liability exists when the possessor is in possession of the land during the construction project or when the possessor resumes control after the project's completion. *Id.* In North Carolina, however, an employer is generally not liable for the negligent acts of an independent contractor unless the work is "(1) ultrahazardous or (2) inherently dangerous, and the employer either knows or should have known that the work is of that type." *Kinsey v. Spann,* 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000). In North Carolina only blasting operations are considered to be "ultrahazardous," *id.,* and it has long been recognized that ordinary building construction is generally not an inherently dangerous activity. *See Vogh v. Geer,* 171 N.C. 672, 676, 88 S.E. 874, 876 (1916).

Our Supreme Court in *Nelson v. Freeland,* in abolishing the distinction between invitees and licensees in premises liability actions emphasized that owners and occupiers are not insurers of their premises, and that North Carolina premises liability law was aligned "with all other aspects of tort law by basing liability upon the pillar of modern tort theory: negligence." *Nelson v. Freeland,* 349 N.C. 615, 632-33, 507 S.E.2d 882, 892-93 (1998). Thus, under the negligence standard imposed by *Roumillat* and *Nelson,* in premises liability cases in North Carolina:

> Owners and occupiers of land have a duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. "Reasonable care" requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge.

*Bolick,* 150 N.C. App. at 430, 562 S.E.2d at 604 (citations omitted); *see also Nelson,* 349 N.C. at 631-32, 507 S.E.2d at 892. Our Supreme Court has stated the duty of a landowner in such a case as follows:

> [T]he owner of the premises has a duty to exercise "ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision." In order to prove that the defendant-proprietor is negligent, plaintiff must show that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or con-

structive notice of its existence. When the unsafe condition is attributable to third parties or an independent agency, *plaintiff* must show that the condition "existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or [to have] given proper warning of its presence." In short, a proprietor is not the insurer of the safety of its customers.

*Roumillat*, 331 N.C. at 64, 414 S.E.2d at 342-43 (citations omitted). Consequently, under *Roumillat*, despite the clear and undisputed fact that plaintiff suffered severe injury directly caused by the collapse of defendant's ceiling, she nevertheless still has the burden of showing that defendant failed to use ordinary care in either providing a safe premises or in failing to warn of the hazard to which she was subjected.

In the case *sub judice*, defendant's evidence tends to show that the accident causing injury to plaintiff was the result of a latent construction defect in the restaurant's ceiling of which defendant had no knowledge, nor any reason to discover the defect. Plaintiff first contends there is evidence that defendant failed to conduct a reasonable inspection of the premises. However, the evidence of record shows the building was inspected and approved for occupancy by the building inspector and plaintiff has failed to produce any evidence to support her allegation that regular inspections of the ceiling would have been necessary or reasonable under the circumstances. *See Lowe v. Bradford*, 305 N.C. 366, 370, 289 S.E.2d 363, 366 (1982) (nonmoving party may not rest on mere allegations).

Plaintiff also contends that there is evidence the hazardous condition was actually caused by defendant. In support of this allegation, plaintiff points to the deposition testimony of Hendrickson in which he stated that the subcontractor told him the only way the accident could have occurred was by someone ripping down or pulling away the molding, and that in Hendrickson's opinion this was the only way such an incident could have occurred. Despite being complete speculation unsupported by the evidence and, with regard to the subcontractor's statement, hearsay, these statements standing by themselves are insufficient to establish a genuine issue of fact as to whether it was defendant who created the unsafe condition. *See Williamson v. Food Lion, Inc.*, 131 N.C. App. 365, 366, 507 S.E.2d 313, 315 (1998), *per curiam aff'd*, 350 N.C. 305, 513 S.E.2d 561 (1999) (negligence not presumed from mere fact of injury, there must be evidence to estab-

**HARRIS v. TRI-ARC FOOD SYS., INC.**

[165 N.C. App. 495 (2004)]

lish negligence beyond speculation or conjecture). Thus, there was no genuine issue of material fact to be decided as to whether defendant was negligent in failing to either discover or in creating the dangerous condition which resulted in plaintiff's injuries. *See Lowe*, 305 N.C. at 369, 289 S.E.2d at 366 ("issue is 'genuine' if it can be proven by substantial evidence").

## II.

**[2]** Plaintiff also argues summary judgment was improperly granted for defendant because the doctrine of *res ipsa loquitur* should be held to apply to the facts of the case at bar. We disagree.

"The doctrine of ' "*[r]es ipsa loquitur*, in its distinctive sense, permits negligence to be inferred from the physical cause of an accident, without the aid of circumstances pointing to the responsible human cause." ' " *Williams v. 100 Block Assoc. Ltd.*, 132 N.C. App. 655, 663, 513 S.E.2d 582, 587 (1999) (quoting *Kekelis v. Machine Works*, 273 N.C. 439, 443, 160 S.E.2d 320, 323 (1968)). Thus, *res ipsa loquitur* applies where there is no available proof of the cause of the injury. *Bowlin v. Duke University*, 108 N.C. App. 145, 149, 423 S.E.2d 320, 322 (1992).

> "In order to invoke the doctrine of *res ipsa loquitur* plaintiff must show, '(1) that there was an injury, (2) that the occurrence causing the injury is one which ordinarily doesn't happen without negligence on someone's part, (3) that the instrumentality which caused the injury was under the exclusive control and management of the defendant.' "

*Williams*, 132 N.C. App. at 663-64, 513 S.E.2d at 587 (quoting *Johnson v. City of Winston-Salem*, 75 N.C. App. 181, 182, 330 S.E.2d 222, 223 (1985)). With respect to the third element of *res ipsa loquitur*:

> " 'The rule of *res ipsa loquitur* never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the *only* probable tortfeasor. In such a case, unless *additional evidence*, which eliminates negligence on the part of all others who have had control of the instrument causing the plaintiff's injury is introduced, the court must nonsuit the case.' "

*Id.* at 664, 513 S.E.2d at 587 (quoting *Bryan v. Elevator Co.*, 2 N.C. App. 593, 596, 163 S.E.2d 534, 536 (1968)).

MEDINA v. DIVISION OF SOC. SERVS.

[165 N.C. App. 502 (2004)]

The doctrine of *res ipsa loquitur* is not applicable in this case, because there is evidence of what caused plaintiff's injury: a latent construction defect in the ceiling of the restaurant. Furthermore, plaintiff has also failed to introduce any evidence eliminating all possible tortfeasors other than defendant as there is evidence that the defect occurred during the construction of the building by Prostruction, and specifically during the work of the subcontractor. Thus, plaintiff has failed to show that defendant had exclusive control of the instrumentality that caused plaintiff's injury, namely the defect in the ceiling construction and as such, the doctrine of *res ipsa loquitur* does not apply. Accordingly, the trial court properly granted summary judgment in favor of defendant.

Affirmed.

Chief Judge MARTIN and Judge TIMMONS-GOODSON concur.