IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-517

No. COA21-689

Filed 2 August 2022

Mecklenburg County, No. 19 CVS 7954

ROBERT ASHER, Plaintiff,

v.

DAVID HUNEYCUTT, MICHAEL KISER and TRACY KISER, Defendants.

Appeal by plaintiff from order entered 17 March 2021 by Judge Karen Eady-Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 May 2022.

> *Green Mistretta Law, PLLC, by Robert A. Smith and Stanley B. Green, for plaintiff-appellant.*
>
> *No brief filed for defendant-appellee David Huneycutt.*
>
> *Martineau King PLLC, by Stephen D. Fuller and Joseph W. Fulton, for defendants-appellees Michael Kiser and Tracy Kiser.*

ZACHARY, Judge.

¶ 1        Plaintiff Robert Asher appeals from the trial court's order granting Defendants Michael and Tracy Kiser's motion for summary judgment. After careful review, we affirm.

**Background**

¶ 2        In 2013, Defendants purchased a rental property in Charlotte, North Carolina (the "House"). The House has three points of entry, all of which require the use of steps: the front door has brick steps, the back porch has a set of steps, and the garage has three wooden steps leading into the House (the "Steps").

¶ 3        Prior to purchasing the House, Defendants hired a professional home inspection company to evaluate the condition of the House and identify any potential problems. Although the inspection revealed several items throughout the House that warranted repair, the only issue that the inspector noted concerning the "steps, stairways, balconies and railings" was that "[t]here [wa]s a little play or movement of the handrail for the steps located in the garage." The inspection company recommended that the "handrail be properly tighten[ed] or re-secured[,]" which Defendants did before renting the House to tenants. Defendant Michael Kiser also stained the Steps and the adjacent handrail, but otherwise Defendants made no alterations to the Steps.

¶ 4        Defendants rented the House to the Rushing family from 2013 to 2015. The Rushings reported no issues with the Steps or the handrail during their tenancy, and Sylvia Rushing described the Steps and handrail as "always in stable and safe condition." After the Rushing family moved out in November 2015, Defendants rented the House to David Huneycutt, who lived there for approximately two and a half years. Huneycutt similarly had no complaints regarding the Steps. At his deposition,

Defendant Michael Kiser explained that he conducts a visual inspection while walking through the House with new tenants when they first move in, and performs this same walkthrough and visual inspection process with the tenants upon the termination of a tenancy. Defendant Michael Kiser, like his tenants, also never observed any problem with the Steps.

¶ 5        On 21 May 2016, Plaintiff and his wife attended a graduation party hosted by Huneycutt at the House. Plaintiff's wife had been using a wheelchair for about a year and half at that time; she could only walk short distances due to a surgical procedure on her left foot. Having visited Huneycutt's home before, Plaintiff knew that his wife would need assistance entering and exiting the House. When they arrived, Huneycutt requested that Plaintiff and his wife use the Steps in the garage. Plaintiff's wife walked up the three Steps using only one foot, "which wore her out tremendously." Plaintiff later stated that he "had some concerns" about the condition of the Steps, but he did not voice his reservations that day.

¶ 6        When Plaintiff and his wife were ready to leave, Huneycutt asked that they exit through the garage rather than the front door to avoid disrupting the party. Then, without consulting Plaintiff or Plaintiff's wife, Huneycutt began maneuvering Plaintiff's wife down the Steps; he grabbed the legs of the wheelchair, tilted her back in the chair, and began moving her down one step at a time. Plaintiff, from the top step, grabbed the handles of the wheelchair in an attempt to stop Huneycutt, worried

that his wife might get hurt. Upon realizing that he could not stop Huneycutt, Plaintiff grabbed his wife and put his arms around her head and neck, to "protect her from any injury going down the" Steps. When Huneycutt stopped moving the chair, Plaintiff lost his balance and fell down the Steps. He landed on a part of his wife's wheelchair, "and his left eye went into a cavity in the wheelchair brace." As a result of this fall, his optic nerve was severed, and Plaintiff lost all vision in his left eye.

¶ 7    Subsequent inspection by the parties' experts revealed that the Steps did not comply with the applicable provisions of the North Carolina Residential Building Code. Specifically, the variance among the Steps' heights was 1/4-inch greater, the threshold height from the floor was 1/4-inch higher, and the variance between each step's tread depth was 3/8-inches greater than the Code permitted; additionally, at least one tread had a 3.1% slope—1.1% greater than the maximum 2% slope that the Code permitted. *See* N.C. State Building Code, §§ 312.1, 314.2 (1997).[1]

¶ 8    On 22 April 2019, Plaintiff and his wife filed a complaint[2] against Defendants and Huneycutt. Plaintiff asserted that Defendants were negligent *per se*, in that they leased a home with steps that violated the Building Code. He also alleged that Defendants were negligent because they breached their common-law duty as

---

[1] The 1997 version of the North Carolina State Building Code is applicable in the instant case, as it was the version of the Code in effect at the time of the House's construction.
[2] Plaintiff's wife voluntarily dismissed her claims without prejudice on 21 October 2021, and consequently was not a party to this lawsuit at the time of appeal.

landlords to lease the House "in a habitable and reasonably safe condition . . . by failing to install and/or maintain a garage staircase that was reasonable to prevent foreseeable falls."

¶ 9 On 8 July 2019, Defendants filed a motion to dismiss, an answer, and crossclaims against Huneycutt. Defendants generally denied liability and asserted several affirmative defenses, including contributory negligence. On 16 September 2020, Defendants filed a motion for summary judgment.

¶ 10 This matter came on for hearing in Mecklenburg County Superior Court on 11 January 2021. On 17 March 2021, the trial court entered an order granting summary judgment in favor of Defendants, finding that "there is no genuine issue of material fact in dispute as to the claims against" Defendants. Although there remained claims pending against Huneycutt, the trial court certified the case for immediate appeal, stating that "there exists no just reason for delay" and that "this order is entered as a Final Judgment [as to Defendants] pursuant to N.C. R. Civ. P. 54(b)."

¶ 11 Plaintiff timely appealed pursuant to Rule 3(c)(2) of the North Carolina Rules of Appellate Procedure. *See* N.C.R. App. P. 3(c)(2). Subsequently, Plaintiff voluntarily dismissed his claims against Huneycutt on 1 July 2021, and Defendants voluntarily dismissed their crossclaims against Huneycutt on 12 July 2021.

### *Grounds for Appellate Review*

¶ 12 This Court chiefly entertains appeals from final judgments. *See* N.C. Gen. Stat.

§ 7A-27(b)(1)–(2) (2021). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381*, reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). By contrast, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381. Because an interlocutory order is not yet final, with few exceptions, "no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge[.]" *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974).

¶ 13 Nonetheless, an interlocutory order disposing of less than all claims in an action may be immediately appealed if "the order affects some substantial right and will work injury to [the] appellant if not corrected before appeal from final judgment[,]" *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (citation omitted); *see also* N.C. Gen. Stat. §§ 1-277(a), 7A-27(b)(3)(a), or if "the trial court certifies, pursuant to N.C.G.S. § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal[,]" *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009); *see also* N.C. Gen. Stat. § 1A-1, Rule 54(b).

¶ 14 It is well settled that a trial court's "[c]ertification under Rule 54(b) permits an interlocutory appeal from orders that are final as to a specific portion of the case, but

which do not dispose of all claims as to all parties." *Duncan v. Duncan*, 366 N.C. 544, 545, 742 S.E.2d 799, 801 (2013). Rule 54(b) provides, in relevant part, that

> [w]hen more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C. Gen. Stat. § 1A-1, Rule 54(b). In other words, a proper Rule 54(b) certification of an interlocutory order requires: (1) that the case involve multiple parties or multiple claims; (2) that the challenged order finally resolve at least one claim against at least one party; (3) that the trial court certify that there is no just reason for delaying an appeal of the order; and (4) that the challenged order itself contain this certification. *See id.*

¶ 15     In the instant case, the trial court's order granting summary judgment in favor of Defendants is interlocutory, as it does not resolve all matters before the court. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. Nevertheless, the trial court's Rule 54(b) certification is effective to create jurisdiction in this Court: at the time of the order, the case involved multiple parties (Plaintiff, Huneycutt, and Defendants) with multiple claims and crossclaims; the order on appeal finally resolved all claims against Defendants (granting summary judgment in Defendants' favor); the trial

court certified that "there exists no just reason for delay"; and Plaintiff appealed from the order containing this certification.

¶ 16    Hence, we conclude that this Court has jurisdiction over this matter and proceed to the merits of Plaintiff's appeal.

## *Discussion*

¶ 17    On appeal, Plaintiff argues that the trial court erred by granting summary judgment in favor of Defendants because Plaintiff produced a sufficient forecast of evidence to establish a prima facie case of (1) negligence *per se*, and (2) common-law negligence. Plaintiff also contends that he "produced a sufficient forecast of evidence to surmount Defendants' affirmative defense of contributory negligence."

### I.    *Standard of Review*

¶ 18    Summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "[T]he evidence presented to the trial court must be admissible at trial and must be viewed in a light most favorable to the non-moving party." *Patmore v. Town of Chapel Hill*, 233 N.C. App. 133, 136, 757 S.E.2d 302, 304 (citations omitted), *disc. review denied*, 367 N.C. 519, 758 S.E.2d 874 (2014). "If the trial court grants summary judgment, the decision

should be affirmed on appeal if there is any ground to support the decision." *Proffitt v. Gosnell*, 257 N.C. App. 148, 151, 809 S.E.2d 200, 204 (2017) (citation omitted).

¶ 19        Appellate courts review "decisions arising from trial court orders granting or denying motions for summary judgment using a de novo standard of review." *Cummings v. Carroll*, 379 N.C. 347, 2021-NCSC-147, ¶ 21. When reviewing de novo, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Blackmon v. Tri-Arc Food Sys., Inc.*, 246 N.C. App. 38, 41, 782 S.E.2d 741, 743 (2016) (citation omitted).

¶ 20        The burden of proof governing motions for summary judgment is well established. Initially, the moving party "bears the burden of establishing that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002). The moving party may meet this burden "by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Id.* (citation omitted). Once the moving party makes the required showing, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating that the nonmoving party will be able to make out at least a prima facie case at trial[.]" *Cummings*, 379 N.C. 347, 2021-NCSC-147, ¶ 21 (citation and internal quotation marks omitted). A "plaintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of

negligence, and upon failure to do so, summary judgment is proper." *Frankenmuth Ins. v. City of Hickory*, 235 N.C. App. 31, 34, 760 S.E.2d 98, 101 (2014) (citation omitted).

## II.    *Analysis*

### A.  *Negligence* per se

¶ 21    Plaintiff first argues that the trial court erred by granting summary judgment for Defendants because he forecast evidence sufficient to establish a claim of negligence *per se*, in that Defendants "breached the statutorily prescribed standard of care" by failing to ensure the Steps' compliance with the Building Code. We disagree.

¶ 22    In order to successfully lodge a claim of negligence *per se*, a plaintiff must establish:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury.

*Hardin v. York Mem'l Park*, 221 N.C. App. 317, 326, 730 S.E.2d 768, 776 (2012) (citation omitted), *disc. review denied*, 366 N.C. 571, 738 S.E.2d 376 (2013).

¶ 23        However, proof that a building's owner violated the State Building Code, without more, is insufficient to establish negligence *per se*. *See Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 415, 395 S.E.2d 112, 114 (1990). Our Supreme Court explained that the building's owner "may not be found negligent *per se* for a violation of the Code unless: (1) the owner knew or should have known of the Code violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation proximately caused injury or damage." *Id.* Accordingly, the plaintiff must demonstrate the owner's actual or constructive knowledge of the Code violations. *See id.* at 415, 395 S.E.2d at 114–15 (concluding that summary judgment of the plaintiff's negligence *per se* claim was proper because the "plaintiff made no showing" that the defendants "knew or should have known of the violation of the Code").

¶ 24        Here, Plaintiff's forecast of evidence failed to support an essential element of his negligence *per se* claim—that Defendants "knew or should have known of the Code violation[.]" *Id.* at 415, 395 S.E.2d at 114. Although Plaintiff contends that "a reasonable inspection would have revealed the violations[,]" the record suggests otherwise. At his deposition, Defendant Michael Kiser stated that he was unaware of any safety issues with the Steps prior to Plaintiff's fall. The Steps were present when Defendants purchased the House, and Defendants did not alter them beyond staining the wood. Neither the Rushings nor Huneycutt—former tenants who were intimately familiar with the House—reported any problems with the Steps to Defendants.

¶ 25    Furthermore, the official home inspection conducted in 2013 revealed no problem with the Steps, except that "[t]here [wa]s a little play or movement of the handrail for the steps located in the garage[,]" which Defendants repaired before renting the House to the Rushings. The issues in question were not obvious, violating the Code by fractions of an inch; indeed, Defendants' expert could not visually identify any Code violations with regard to the Steps prior to measuring them. It follows, then, that it is not unreasonable for Defendants, who are neither construction nor carpentry professionals, to fail to notice the modest violations.

¶ 26    Accordingly, although the Steps violated provisions of the Code, *see* N.C. State Building Code, §§ 312.1, 314.2, Plaintiff cannot adequately demonstrate that Defendants "knew or should have known of the Code violation[s,]" *Lamm*, 327 N.C. at 415, 395 S.E.2d at 114. Plaintiff thus cannot establish that Defendants were negligent *per se* by violating the Code. In that Plaintiff's "forecast of evidence fail[ed] to support an essential element of the claim[,]" we conclude that the trial court appropriately granted summary judgment in favor of Defendants under this theory. *Wallen v. Riverside Sports Ctr.*, 173 N.C. App. 408, 411, 618 S.E.2d 858, 861, *disc. rev. dismissed*, 360 N.C. 180, 626 S.E.2d 840 (2005).

### B. Common-Law Negligence

¶ 27    Plaintiff next argues that the trial court erroneously granted summary judgment in favor of Defendants on Plaintiff's common-law negligence claim because

he presented sufficient evidence establishing that Defendants breached their common-law duty of reasonable care. Plaintiff asserts that because Defendants retained control over the Steps, they had a duty to inspect them and perform any necessary repairs, which Defendants breached, as evidenced by the Steps' noncompliance with the Code.[3] Again, we disagree.

¶ 28 Where a defendant has moved for summary judgment of a common-law negligence claim, the

> plaintiff must establish a prima facie case . . . by showing: (1) that [the] defendant failed to exercise proper care in the performance of a duty owed [to the] plaintiff; (2) the negligent breach of that duty was a proximate cause of [the] plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that [the] plaintiff's injury was probable under the circumstances.

*Lavelle v. Schultz*, 120 N.C. App. 857, 859–60, 463 S.E.2d 567, 569 (1995), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 715 (1996).

¶ 29 Landowners in particular have a nondelegable "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998) (eliminating the distinction

---

[3] Plaintiff also argues that a "[v]iolation of the Code's standards is strong evidence of common law negligence[,]" citing *Collingwood v. General Electric Real Estate Equities, Inc.*, 324 N.C. 63, 376 S.E.2d 425 (1989). However, the *Collingwood* Court concluded that a landlord's *compliance* with a statutory standard is some evidence of due care; it did not address the converse. 324 N.C. at 68–69, 376 S.E.2d at 428. Here, Plaintiff argues that Defendants' *violation* of the Code definitively demonstrates a breach of duty. Therefore, Plaintiff's reliance on *Collingwood* is misplaced.

between licensees and invitees), *reh'g denied*, 350 N.C. 108, 533 S.E.2d 467 (1999). Further, "a landlord is potentially liable for injuries to third persons if he has control of the leased premises. Similarly, a landlord owes a duty to third parties for conditions over which he retained control." *Holcomb v. Colonial Assocs., L.L.C.*, 358 N.C. 501, 508, 597 S.E.2d 710, 715 (citation and internal quotation marks omitted), *reh'g denied*, 359 N.C. 198, 607 S.E.2d 270 (2004).

¶ 30 The landowner's duty of reasonable care owed to lawful visitors

> requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge. This duty includes an obligation to exercise reasonable care with regard to reasonably foreseeable injury . . . . [P]remises liability and failure to warn of hidden dangers are claims based on a true negligence standard which focuses attention upon the pertinent issue of whether the landowner acted as a reasonable person would under the circumstances.

*Shepard v. Catawba Coll.*, 270 N.C. App. 53, 64, 838 S.E.2d 478, 486 (2020) (citation omitted). "This duty also requires a landowner . . . to make a reasonable inspection to ascertain the existence of hidden dangers." *McCorkle v. N. Point Chrysler Jeep, Inc.*, 208 N.C. App. 711, 714, 703 S.E.2d 750, 752 (2010).

¶ 31 Therefore, to prove a defendant's negligence in a premises liability case, "a plaintiff must show that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or

constructive notice of its existence." *Burnham v. S&L Sawmill, Inc.*, 229 N.C. App. 334, 340, 749 S.E.2d 75, 80 (citation and internal quotation marks omitted), *disc. review denied*, 367 N.C. 281, 752 S.E.2d 474 (2013); *see also Harris v. Tri-Arc Food Sys. Inc.*, 165 N.C. App. 495, 500, 598 S.E.2d 644, 648, *disc. review denied*, 359 N.C. 188, 607 S.E.2d 270 (2004).

¶ 32    In *Harris*, the trial court granted summary judgment in favor of the defendant in a negligence action where the ceiling in the defendant's restaurant collapsed on the plaintiff due to a latent construction defect. 165 N.C. App. at 496, 598 S.E.2d at 646. The defendant last had the restaurant's ceiling inspected when the building inspector approved the building for occupancy, as "it was not a part of [the] defendant's procedures to regularly inspect the ceiling." *Id.* at 497, 598 S.E.2d at 646. However, the "defendant was not aware of any defect or condition existent in the construction of the ceiling." *Id.* Thus, although the plaintiff contended that the "defendant failed to conduct a reasonable inspection of the premises[,]" this Court concluded otherwise, reasoning that "the building was inspected and approved for occupancy by the building inspector and [the] plaintiff ha[d] failed to produce any evidence to support her allegation that regular inspections of the ceiling would have been necessary or reasonable under the circumstances." *Id.* at 500, 598 S.E.2d at 648.

¶ 33    In the present case, although Defendants owed a duty of reasonable care to Plaintiff as a lawful visitor on their property, Plaintiff cannot demonstrate that

Defendants breached their duty by failing to notice and remedy the Steps' minor Code violations. Plaintiff is correct in his assertion that Defendants retained control over the House and the Steps within it: the lease agreement between Defendants and Huneycutt provided that Defendants retained the right "to enter the Premises for the purpose of inspecting the Premises . . . [a]nd for the purposes of making any repairs[.]" Consequently, Defendants owed a duty of reasonable care to Plaintiff as a lawful visitor. *See, e.g.*, *Holcomb*, 358 N.C. at 508, 597 S.E.2d at 715 (concluding that a landlord-defendant owed a duty to a visitor-plaintiff when a tenant's dog bit the plaintiff, in that the landlord retained control over the dog because the landlord and tenant had "contractually agreed" in the lease that the tenant would remove any pet that the landlord deemed a nuisance).

¶ 34 Having established that Defendants owed Plaintiff a duty of reasonable care in the maintenance of their premises, the dispositive issue is whether Defendants, as landowners, "acted as a reasonable person would under the circumstances." *Shepard*, 270 N.C. App. at 64, 838 S.E.2d at 486 (citation omitted). The facts presented for summary judgment, construed in the light most favorable to Plaintiff, *see Patmore*, 233 N.C. App. at 136, 757 S.E.2d at 304, demonstrate that Defendants acted reasonably.

¶ 35 Plaintiff argues that Defendants breached their duty of reasonable care because they failed to notice "the unreasonably hazardous conditions and Code

violations[,]" which "a reasonable inspection would have revealed[.]" In support of this contention, Plaintiff points to his expert's opinion that a person could have discovered the problems with the Steps "us[ing] nothing more than a tape measure or other simple tools to detect them—no specialized equipment or calculations would be needed (with the possible exception of the calculation of tread slope)." Accepting this as true, as we must, Plaintiff nevertheless fails to demonstrate that an owner's failure to measure the width and height of the steps and calculate the tread slope constitutes a breach of the owner's duty "to make a *reasonable* inspection to ascertain the existence of hidden dangers." *McCorkle*, 208 N.C. App. at 714, 703 S.E.2d at 752 (emphasis added).

¶ 36        Rather than measuring the Steps themselves, Defendants relied on a licensed home inspector's expertise and the feedback of those who regularly used the Steps. Before renting the House, Defendants hired a professional home inspection company to evaluate the condition of the House, thereby identifying all problems with the property. The inspector reported only one issue involving the Steps—the loose handrail—and Defendants remedied it swiftly.

¶ 37        Moreover, Defendants never received any complaints from the Rushings or Huneycutt about the Steps, and Sylvia Rushing explicitly stated in her affidavit that she "never had any concerns" about them. Defendant Michael Kiser also visually examined the Steps multiple times while performing walkthrough inspections in the

house before and after changes in tenancy, and he never detected any issues with the Steps. In light of the inspector's report, their tenants' accounts, and their own inspections of the Steps—none of which suggested the presence of the minor Code violations at issue—Defendants had no reason to suspect that the Steps contained "hidden hazards" that required repairs or warnings. *See Shepard*, 270 N.C. App. at 64, 838 S.E.2d at 486 (citation omitted).

¶ 38      Like the restaurant in *Harris*, the House in the case at bar was inspected by a professional inspector. 165 N.C. App. at 497, 598 S.E.2d at 646. And like the defendant in *Harris*, Defendants "w[ere] not aware of any defect or condition existent in the construction of the" Steps. *Id.* Furthermore, "[P]laintiff has failed to produce any evidence to support h[is] allegation" that, absent any reported or identified issues with the Steps, it "would have been necessary or reasonable under the circumstances" for Defendants to measure the Steps after the initial professional home inspection. *Id.* at 500, 598 S.E.2d at 648. Accepting Plaintiff's position would require landowners to double-check the work of their hired professionals, which would unreasonably mandate that landowners perform important safety tasks without the requisite expertise.

¶ 39      Defendants hired a professional inspector, inquired of their tenants about any issues with the property, and performed visual inspections during walkthroughs of the House. Plaintiff has failed to come forward with evidence that Defendants

breached their duty "to make a reasonable inspection to ascertain the existence of hidden dangers." *McCorkle*, 208 N.C. App. at 714, 703 S.E.2d at 752. As such, Plaintiff cannot demonstrate that Defendants "negligently failed to correct the condition [of the Steps] after actual or constructive notice of its existence." *Burnham*, 229 N.C. App. at 340, 749 S.E.2d at 80 (citation omitted).

We therefore conclude that the trial court did not err in granting summary judgment in favor of Defendants on this claim. Having so determined, we need not reach Plaintiff's other arguments on appeal.

## *Conclusion*

For the foregoing reasons, we conclude that the trial court did not err by granting summary judgment in favor of Defendants on Plaintiff's claims for negligence *per se* and common-law negligence. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges INMAN and JACKSON concur.